This is a review by writ of certiorari. We granted the writ in response to Donald R. Johnson's petition, which asserts that the Court of Criminal Appeals erred to reversal, 502 So.2d 401 (Ala.Crim.App. *Page 235 
1986), in affirming his conviction on two counts of motor vehicle theft. As grounds in support thereof, he argues that the trial court improperly admitted into evidence a statement that, he says, was obtained by police in violation of constitutional safeguards, and that the trial court improperly allowed a jointly indicated co-defendant to testify for the State over the objection of petitioner. The conviction was affirmed without opinion. For the reasons indicated herein, we reverse.
 Facts The following events occurred during the evening and early morning hours of August 18-19, 1984: Donald R. Johnson and Anthony L. Glassco, who were incarcerated together in the same cell, escaped from the Lincoln County jail at Fayetteville, Tennessee. The pair traveled later that same night to neighboring Madison County, Alabama, where in Huntsville they stole a 1974 Mercury Montego automobile. The ignition key had been left on the floorboard of the vehicle, which was parked at the owner's residence in a mobile home park. Johnson and Glassco then crossed back into Tennessee in this vehicle. It was not clearly established which of the two was operating the vehicle following this theft. At some point the two became heavily intoxicated and, as an apparent result, were involved in a one-vehicle accident on a rural stretch of road in Lawrence County, Tennessee. Both Johnson and Glassco suffered minor personal injuries, but the Mercury automobile they had stolen was damaged beyond repair. The pair fled the accident scene, abandoning the wrecked vehicle. Johnson and Glassco then hitchhiked back to Alabama, where they took refuge briefly in Huntsville at the home of Johnson's sister. Subsequently, the pair stole a white 1975 Chrysler Cordoba that was parked at the owner's house in New Market, a community located in Madison County near Huntsville. Again the theft was facilitated by the fact that the owner had left the ignition key on the floorboard of the vehicle. The pair then drove back to Fayetteville, Tennessee, in the Cordoba, and there they were apprehended after being spotted by a deputy sheriff as they drove through the parking lot of the Lincoln County jail. One of the arresting officers testified that at the time of their recapture Donald Johnson was driving the automobile and Anthony Glassco was seated on the passenger side. Trooper Kevin Horan of the Tennessee Highway Patrol was assigned to investigate the one-vehicle accident that had occurred on August 19 or 20 involving the 1974 Mercury Montego. Trooper Horan came to the Lincoln County jail on August 24, to interview Johnson and Glassco concerning the accident. After a statement was taken from Glassco, Johnson was brought from his cell for the purpose of being interviewed by Trooper Horan. Chief Deputy Sheriff Mullins of the Lincoln County Sheriff's Department was present during the entire interview. After some preliminary discussion, but prior to questioning, Trooper Horan informed Johnson of his "Miranda" rights. Johnson agreed to answer questions, signed a waiver,[1] and then gave an inculpatory statement to Trooper Horan. It is the admission of this statement over his objection at trial to which Johnson here assigns error. Our focus in this context is on the nature of the preliminary discussions indicated above, which resulted in a finding by the trial court of a voluntary, knowing, and intelligent waiver.
 I. The first issue for our determination is: Was the statement given by Johnson to Trooper Horan obtained in violation of constitutional safeguards and hence inadmissible in Johnson's subsequent criminal trial?
 "It is a well settled rule of law in Alabama that a statement made subsequent to arrest is prima facie involuntary and *Page 236 
inadmissible at trial, and the State must demonstrate voluntariness and a Miranda predicate in order to gain admission of the statement." (Citations omitted.)
Crowe v. State, 485 So.2d 351, 359 (Ala.Crim.App. 1984), reversed on other grounds, 485 So.2d 373 (Ala. 1985). Moreover, "[w]hen evaluating whether the State has proved waiver, courts indulge in every reasonable presumption against waiver." Tinsley v. Purvis, 731 F.2d 791, 794 (11th Cir. 1984), citing with approval, Brewer v. Williams, 430 U.S. 387,97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). "The question of whether a confession is voluntary is a question of law to be first decided by the Court." Deloach v. State, 356 So.2d 222, 228
(Ala.Crim.App. 1977), cert. denied, 356 So.2d 230 (Ala. 1978). The trial court here properly conducted a hearing, outside the presence of the jury, to determine the voluntariness of Johnson's statement. See Lewis v. State, 57 Ala. App. 545, 329 So.2d 596 (1975), affirmed, 295 Ala. 350, 329 So.2d 599 (1976). During the hearing Trooper Horan testified as to what transpired at the interrogation of Johnson. Trooper Horan, in essence, confirmed that he advised Johnson of his constitutional right to remain silent and of his right to appointed legal counsel. Trooper Horan also testified that at no time was Johnson threatened, coerced, or offered any reward in exchange for his agreement to answer questions. Donald Johnson then took the stand for the limited purpose of testifying on the issue of voluntariness. Johnson testified that he consented to answer questions only upon Trooper Horan's assurance that his responses were for use in the completion of a traffic accident report in Tennessee and that those responses would not be used against him in any criminal proceeding in Tennessee or Alabama. On cross-examination Trooper Horan had testified that he did not recall saying to Johnson that the statement and accident report would not be used against him in subsequent proceedings in Alabama. The testimony being in dispute, the trial court made a credibility choice and accepted the testimony of Trooper Horan. "Making decisions based on disputed facts is an essential duty of trial judges." Sales v. State, 432 So.2d 560, 562 (Ala.Crim.App. 1983). Moreover, because the determination of voluntariness of a confession is within the sound discretion of the trial judge, it has been generally held that "his decision will not be disturbed unless it is palpably contrary to the great weight of the evidence. He need only be convinced by a preponderance of the evidence that it was voluntarily made." Hammins v. State, 439 So.2d 809, 811
(Ala.Crim.App. 1983) (citations omitted). In answering whether the trial judge's decision was supported by a preponderance of the evidence in this case, our inquiry is at all times guided by the principles enunciated in the landmark decision of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its most recent progeny; Brewer v. Williams, supra; Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); and Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986):
 "In Miranda v. Arizona, the Court recognized that custodial interrogations, by their very nature, generate 'compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.' 384 U.S., at 467, 86 S.Ct., at 1624. To combat this inherent compulsion, and thereby protect the Fifth Amendment privilege against self incrimination, Miranda imposed on the police an obligation to follow certain procedures in their dealings with the accused. In particular, prior to the initiation of questioning, they must fully apprise the suspect of the state's intention to use his statements to secure a conviction, and must inform him of his rights to remain silent and to 'have counsel present . . . if [he] so desires.' Id., at 468-470, 86 S.Ct., at 1624-1626. Beyond this duty to inform, Miranda requires that the police respect the accused's decision to exercise the rights outlined in the warnings. 'If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, [or if he] states that he wants an *Page 237 
attorney, the interrogation must cease.' Miranda, 384 U.S., at 473-474, 86 S.Ct., at 1627 . . . .
". . . .
 ". . . Miranda [also] holds that '[t]he defendant may waive effectuation' of the rights conveyed in the warnings 'provided the waiver is made voluntarily, knowingly and intelligently.' 384 U.S., at 444, 475, 86 S.Ct., at 1612, 1628. The inquiry has two distinct dimensions. Edwards v. Arizona, supra, 451 U.S., at 482, 101 S.Ct., at 1885; Brewer v. Williams, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977). First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived. Fare v. Michael C., 442 U.S. 707 [99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)]." (Emphasis supplied.)
 Moran, supra, 475 U.S. at 421, 106 S.Ct. at 1141. Under the "totality of the circumstances" in the instant case, that standard by which we are bound, we must conclude that Johnson's statement to Trooper Horan was the product of deception, albeit somewhat slight. On cross-examination of Trooper Horan, the following colloquy occurred:
 "Q Now you were not there investigating any kind of stolen vehicle, were you?
"A No, Sir.
 "Q Your sole purpose in being there was investigating this accident?
"A Yes, Sir.
". . . .
 "Q Prior to the time Mr. Johnson made this statement, did you tell him your purpose in being there?
 "A Yes, Sir. The investigation of a traffic accident strictly.
"Q Strictly?
"A Yes, Sir.
". . . .
 "Q Did you ever tell Mr. Johnson that Alabama won't ever see this report, this statement?
"A No, Sir.
"Q You never told him that?
 "A I don't remember telling him that. I would not make a statement like that. I'm not saying I didn't, I just don't remember saying it.
"Q You just don't remember saying it?
 "A I will put it that way, because I would see no purpose to make a statement like that."
(Emphasis supplied.)
 Trooper Horan's own testimony shows that Johnson was told the interview was "strictly" for the purpose of investigation of a traffic accident. "In order to be admissible a confession must be free and voluntary and cannot be the result of any direct or implied promises, however slight." Eakes v. State, 387 So.2d 855, 859 (Ala.Crim.App. 1978) (citations omitted). Accord, Moran, supra. Moreover, the record shows that Trooper Horan could not affirmatively and unequivocally testify that he did not, at the time of the interview, tell Donald Johnson that the accident report would not be used in Alabama, as Johnson asserts that he did. It should be noted here that Chief Deputy Mullins, who was present during the entire interview and who signed as a witness to Donald Johnson's purported waiver of rights, was not called to corroborate Trooper Horan's testimony. From our examination of the attendant circumstances, we find ample evidence that Johnson's statement was deceptively induced. Johnson's purported waiver of rights being, therefore, not voluntary, knowing, and intelligent, the statement was inadmissible at trial. This conclusion is further supported by testimonial evidence indicating that, prior to Trooper Horan's interrogation, Donald Johnson had twice asserted his Fifth Amendment right to remain silent: *Page 238 
 "Q Prior to that day had anyone questioned you or attempted to question you?
 "A There was an investigator from the State of Alabama that wanted to question me and I had refused to go down and talk to him.
"Q Do you recall what his name was?
 "A No, Sir, they didn't give me his name, they just said there was an investigator wanting to talk to me, I told him I didn't have nothing to say to him.
 "Q Did [Lincoln County] Sheriff Bean also try to question you?
"A Yes, Sir.
"Q When was that?
 "A It was right after we got caught, the same day we got caught down there in Lincoln County. I told him I didn't want to talk to him unless I had my lawyer present."
 Donald Johnson's testimony in this regard was uncontroverted. Upon assertion by a defendant of either his right to counsel[2] or his right to remain silent, all police custodial interrogation must immediately cease. United States v. Bosby, 675 F.2d 1174, 1181 (11th Cir. 1982). The impact, however, on subsequent police conduct is determined by the particular right invoked. Id. at 1181-82. Citing as authoritatively instructive Edwards v. Arizona, supra, the 11th Circuit Court of Appeals in Bosby observed:
 "Upon assertion of his right to counsel, law enforcement officials cannot subject the defendant to further questioning until an attorney has been appointed for him and he has been accorded the opportunity to consult [citations omitted]. Thus a request for counsel acts as an absolute prohibition on the right of police to initiate questioning until an attorney has been appointed. No such proscription upon the right of police to resume questioning exists where a defendant asserts his right to remain silent. Instead, law enforcement officials are required to cease questioning the defendant but may resume the interrogation at some later time. [Citations omitted]."
 675 F.2d at 1182. Thus, when Johnson stated to Sheriff Bean that he did not wish to answer any questions without first consulting his attorney, he should not have been subjected to any further police questioning until he had been afforded the opportunity to consult his attorney. The questioning initiated by Trooper Horan was, therefore, improper.
 II. Johnson next asserts that the trial court improperly allowed Anthony Glassco, a jointly indicted co-defendant, to testify at trial. Prior to receiving Glassco's testimony, the court had entered an order severing Glassco from the trial of Johnson. Because of the result reached in our determination of the first issue in this case, we find it unnecessary to address this contention.
 Based on the foregoing, the Court of Criminal Appeals erred in affirming the conviction of petitioner Donald R. Johnson. The defendant being thus entitled to a new trial, the judgment below is reversed and the cause is remanded to the Court of Criminal Appeals with instructions to enter an appropriate order.
REVERSED AND REMANDED WITH INSTRUCTIONS.
 TORBERT, C.J., and JONES, ALMON, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
MADDOX and BEATTY, JJ., concur in the result.
[1] On this point, there was conflicting evidence presented. Johnson testified that he signed only the form on which his statement was taken, not the waiver of rights, which is printed on the reverse side. Trooper Horan testified that Johnson signed both the statement and the waiver. Johnson denied that the signature on the waiver of rights was his own.
[2] "It is not the right to counsel that the Fifth Amendment protects but the freedom from custodial interrogation without counsel." United States v. Tyler, 592 F.2d 261 (5th Cir. 1979). *Page 239