Corey Matthews pleaded guilty to robbery, burglary, and theft of property. Before pleading guilty, Matthews moved to suppress certain incriminating statements that he made to police officers and an investigator for the district attorney's office. At the suppression hearing, the record shows that the following statements were made to Matthews before he made his incriminating statements:
 1) "There's a possibility that being an accomplice and not actually doing the deed, you might get boot camp."
 2) "Let me explain something to you, I'm not the investigator for this department, I'm the investigator for the district attorney. I can go back and tell the district attorney, Corey Matthews cooperated with me or I can go back and tell the district attorney that Corey Matthews did not cooperate with me. That's right, I have that option Corey."
3) "We might cut you a deal."
 4) "You've got an opportunity right here . . . to tell us what you know. Corey, it could make a lot of difference for you."
 5) "You know there's two ways to go about things, either you go about it and *Page 53 
you don't cooperate and the judge knows that you didn't and the district attorney knows you didn't or you turn around and you did cooperate, you know."
The trial court denied the motion and Matthews pleaded guilty, reserving his right to appeal the denial of his motion to suppress the incriminating statements. Matthews appealed to the Court of Criminal Appeals, claiming that the incriminating statements that he made to the officers and the investigator were involuntary and inadmissible because, he argued, he had made them under the impression that the State would go easy on him if he confessed or hard on him if he did not. The Court of Criminal Appeals affirmed, with an unpublished memorandum, 586 So.2d 306, and later denied Matthews's application for rehearing. 587 So.2d 1114. We granted certiorari review and we reverse the judgment of the Court of Criminal Appeals, concluding that the statements were involuntary and, therefore, inadmissible.
It is well settled in this Court that "[e]xtrajudicial confessions are prima facie involuntary and inadmissible, and [that] the burden is on the State to prove that the confession was made voluntarily." Ex parte Callahan, 471 So.2d 463, 464
(Ala. 1985). See Ex parte Weeks, 531 So.2d 643 (Ala. 1988). [A confession is merely an incriminating statement and the law concerning the admissibility of one applies equally to the other.] This court stated in Wallace v. State, 290 Ala. 201,204, 275 So.2d 634, 636 (1973):
 "[A]ll extrajudicial confessions are presumed to be involuntary and, therefore, are prima facie inadmissible with the onus resting on the prosecution to repel the imputation of undue influence unless the attending circumstances affirmatively disclose the voluntariness of the confession. Any inducement of profit or benefit held out; any hope engineered or encouraged that the prisoner's case will be lightened, meliorated, or more favorably dealt with if he will confess; either of these is enough to exclude the confession thereby superinduced. Any words spoken in the hearing of the prisoner which may, in their nature, generate fear or hope render it not only proper but necessary that a confession made within a reasonable time afterwards shall be excluded, unless it is shown by clear and full proof that the confession was voluntarily made after all trace of hope or fear had been fully withdrawn or explained away and the mind of the prisoner made as free from fear, intimidation or hope for reward as if no attempt had ever been made to obtain such a confession."
The reasoning behind the exclusion of confessions obtained by the promise of a reward or by a threat was stated inLuttrell v. State, 551 So.2d 1126 (Ala.Cr.App. 1989), as follows:
 " 'The abhorrence of society to the use of involuntary confessions does not turn alone on their inherent untrustworthiness. It also turns on the deep-rooted feeling that the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves.' "
551 So.2d at 1128, quoting Ex parte McCary, 528 So.2d 1133,1135 (Ala. 1988).
Matthews and the officers gave conflicting accounts concerning Matthews's motivation to make the incriminating statements. The State argues that Matthews decided to make the statements only after he was told that his alibi witnesses did not confirm his alibi; however, Matthews argues that he decided to make the incriminating statements after the officers suggested that to do so would be to his benefit. When there is conflicting evidence of the circumstances surrounding an incriminating statement or a confession, it is the duty of the trial judge to determine its admissibility, and if the trial judge decides it is admissible his decision will not be disturbed on appeal "unless found to be manifestly contrary to the great weight of the evidence." Williams v. State,456 So.2d 852, 855 (Ala.Crim.App. 1984).
 " 'The true test of voluntariness of extra-judicial confessions is whether, under all surrounding circumstances, they have *Page 54 
been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor; and if so, whether true or false, such confessions must be excluded from the consideration of the jury as having been procured by undue influence.' "
Ex parte Weeks, 531 So.2d at 644, quoting Womack v. State,281 Ala. 499, 205 So.2d 579 (1967).
In Wallace, an officer promised the defendant that if he told the truth the officer would discuss his cooperation with the probation officer. This Court found that this statement alone was not enough to render the defendant's statement involuntary. "The statement was neither an express nor implied promise of reward if appellant admitted his guilt. . . . [The officer's] remarks were no stronger than to convey the idea to appellant that it would be best or better to tell the truth if he made a statement." Wallace, 290 Ala. at 206, 275 So.2d at 638. However, the question concerning the voluntariness of a defendant's statement must be decided by reviewing the "totality of the circumstances." Luttrell v. State,551 So.2d at 1129 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 227,93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973); United States v.Recalde, 761 F.2d 1448, 1453 (10th Cir. 1985)).
The State argues that Matthews consented to make a statement. The Court of Criminal Appeals in Luttrell noted that there are three factors to be considered in determining whether the State has sustained its burden of proving that a defendant's "consent" was voluntary.
 " 'First, there must be clear and positive testimony that the consent was unequivocal and specific. Second, the Government must establish that the consent was given without duress or coercion. Finally, we evaluate those first two standards with the traditional indulgence of the courts against a presumption of waiver of constitutional rights.' "
Luttrell, 551 So.2d at 1129 (quoting Bradley v. State,494 So.2d 750, 758 (Ala.Cr.App. 1985), in turn quoting UnitedStates v. Recalde, 761 F.2d 1448, 1453 (10th Cir. 1985)).
The State argues that it was not seeking a confession from Matthews, but was merely seeking any information he had concerning a string of burglaries. However, because the State admits that Matthews was a "suspect" in these burglaries, this Court concludes from the record that it was indeed seeking a confession from Matthews. The State also argues that while the officers and the investigator for the district attorney may have made the quoted statements to Matthews, they emphasized the fact that they "could not make any promises" and that any hope they instilled in Matthews concerning the possibility of obtaining "boot camp" was withdrawn before he made his statements. This Court acknowledges that there is evidence that, after a conversation with the district attorney, an officer did adequately explain to Matthews that the statement about "boot camp" was made prematurely and that they could no longer offer "boot camp" to him.
Despite the State's withdrawal of the statement about "boot camp," there were still several other questionable statements made to Matthews by the officers. The trial court apparently found that these statements were not the cause of Matthews's incriminating statements, and that the cause was the fact that his alibi fell through. However, it is well grounded in Alabama law that " '[i]n order to be admissible a confession must be free and voluntary and cannot be the result of any direct or implied promises, however slight." Ex parte Johnson,522 So.2d 234, 237 (Ala. 1988) (quoting Eakes v. State, 387 So.2d 855,859 (Ala.Cr.App. 1978)). (Emphasis added.)
After reviewing all of these statements made by the officers and the investigator, this Court concludes that the statements "engineered and encouraged" Matthews to think that he would be "more favorably dealt with if he [would] confess." SeeWallace, 290 Ala. at 204, 275 So.2d at 636. Therefore, this Court concludes that the finding of the trial court was manifestly *Page 55 
contrary to the great weight of the evidence. As a result of the trial court's finding that Matthews's incriminating statements were voluntary and admissible, he pleaded guilty. The statements made to Matthews in this case are prime examples of statements that entice a suspect into making a confession. Matthews's incriminating statements were not trustworthy, because the statements to him strongly suggested that it would be difficult for him if he did not come forward with information but would be easier for him if he did. Therefore, the Court of Criminal Appeals erred by affirming the judgment of conviction. That court's judgment is reversed and the cause is remanded for the entry of a judgment consistent with this opinion.
REVERSE AND REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, STEAGALL and INGRAM, JJ., concur.
HOUSTON and KENNEDY, JJ., dissent.