The appellant, Michael O'Shields, appeals his conviction for murder, a violation of § 13A-6-2, Code of Alabama 1975. He was sentenced to life in the penitentiary.
The state's evidence tended to show that in March 1990 the appellant murdered his ex-wife, Ruby Oliver. Betty Hemphill testified that she had attended Riley College with Ruby in 1990. She stated that one Wednesday in March 1990 the appellant picked Ruby up at school around noon and that she did not see the victim after that day.
Michael Alston Nichols, a friend of the appellant's, testified that one afternoon in March 1990 he went to the appellant's trailer and the appellant told him that he had killed Ruby. Nichols further testified that at the time he did not believe what the appellant was telling him. The appellant then directed Nichols to his bedroom where, Nichols said, the appellant had Ruby's body wrapped in a blanket. Nichols testified that he told the appellant that he would not telephone the police and he then left. Nichols stated that the appellant came to his house with Ruby's body about 10:30 p.m. that evening to get some cement blocks. He said that he accompanied the appellant when he dumped Ruby's body with cement blocks into the Alabama River. Ruby's body was never recovered.
O'Shields, in his confession, stated that he picked Ruby up at Riley College one day in March 1990 so that Ruby could get some things from his trailer. They got into a heated discussion, O'Shields said, concerning her relationship with someone else. He stated that Ruby told him that she was in love with the other person and that she did not care for him anymore. O'Shields further confessed that Ruby told him that he "did nothing" for her sexually. O'Shields stated that he "lost it", knocked her down, choked her to death, and then threw her body in the Alabama River.
David O'Shields, the appellant's uncle, testified that the appellant, who was white, had told him that he had strangled his ex-wife because she was dating a black man and had thrown her body in the river.
Mike Kynard, a friend of the appellant's, testified regarding three conversations he had with O'Shields. Kynard testified that in 1990 O'Shields told him that he had threatened Ruby after learning that she was dating a black man, and that she had left town. A month later, Kynard stated, O'Shields told him that he had ties to the Mafia and that he had traded someone in the Mafia a Thunderbird automobile to have Ruby killed. Kynard testified that two weeks after that conversation O'Shields confessed to him that he had killed Ruby and had thrown her body in a river.
 I
The appellant contends that the trial court erred by denying his motion to suppress *Page 229 
his confession. Specifically, he claims that he had invoked his right to counsel before giving the statement, that counsel was provided, and that his confession was coerced.
The record reflects that in May 1994 the appellant was in custody in the Montgomery County jail on an unrelated capital murder charge. Officer Art Freine, of the Selma Police Department, testified at the hearing on the motion to suppress that he and Officer Joe Harrell went to the Montgomery Police Department on May 12, 1994, to question the appellant about Ruby Oliver's disappearance.
Freine testified that the morning interview was conducted primarily by Officer Joe Harrell. Freine stated that he was present during most of the interview, but said that he did leave the room several times. Freine stated that he did recall the appellant saying "I think I may need a lawyer" during the morning interview. Freine testified that Officer Harrell continued the interview after the appellant invoked his right to counsel. Harrell testified that he probably should have ceased questioning at that time but he did not.
Officer D.H. Carmichael, a Montgomery Police Officer, testified that he interrupted the morning interview to take the appellant to the jail for his lunch. Carmichael stated that he then went to lunch with Harrell and Freine. After returning from lunch, Carmichael asked the appellant if he wanted to talk anymore with Freine or Harrell. He said that he told the appellant, "if you want to, fine; if you don't, fine." The appellant then confessed to Freine and Carmichael.
The trial court found that the appellant had invoked his right to counsel during the morning interview and correctly suppressed the morning statement. The trial court, however, found that the appellant initiated the afternoon interview and it incorrectly received into evidence the appellant's confession.
The United States Supreme Court in Edwards v. Arizona,451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), addressed this issue, stating:
 "[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."
451 U.S. at 484-85, 101 S.Ct. at 1884-85, 68 L.Ed.2d at 386
(1981). (Emphasis added.)
Once a suspect invokes the right to counsel, the suspect cannot be subjected to further interrogation "unless the suspect himself initiates dialogue with the authorities."Wyrick v. Fields, 459 U.S. 42, 46, 103 S.Ct. 394, 395,74 L.Ed.2d 214 (1982). "When counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." Minnick v. Mississippi,498 U.S. 146, 153, 111 S.Ct. 486, 491, 112 L.Ed.2d 489, 498 (1990).
In Oregon v. Bradshaw, 462 U.S. 1039, 103 S.Ct. 2830,77 L.Ed.2d 405 (1983), the United States Supreme Court defined "initiate" as that term was used in Edwards. The Court stated:
 "While we doubt that it would be desirable to build a superstructure of legal refinements around the word 'initiate' in this context, there are undoubtedly situations where a bare inquiry by either a defendant or by a police officer should not be held to 'initiate' any inquiries, such as a request for a drink of water or a request to use a telephone, that are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation."
462 U.S. at 1045-46, 103 S.Ct. at 2835, 77 L.Ed.2d at 412. *Page 230 
The Court, in Arizona v. Roberson, 486 U.S. 675,108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), expounded upon Edwards and stated:
 "The rule of the Edwards case came as a corollary to Miranda's admonition that '[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present.' 384 U.S. at 474, 86 S.Ct. at 1627-1628. In such an instance, we had concluded in Miranda, '[i]f the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.' Id., at 474, 86 S.Ct., at 1628. In Edwards, we 'reconfirm[ed] these views and, to lend them substance, we emphasize[d] that it is inconsistent with Miranda and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel.' 451 U.S., at 485, 101 S.Ct., at 1885. We concluded that reinterrogation may only occur if 'the accused himself initiates further communication, exchanges, or conversations with the police.' Ibid. Thus, the prophylactic protections that the Miranda warnings provide to counteract the 'inherently compelling pressures' of custodial interrogation and to 'permit a full opportunity to exercise the privilege against self-incrimination,' 384 U.S., at 467, 86 S.Ct., at 1624, are implemented by the application of the Edwards
corollary that if the suspect believes that he is not capable of undergoing such questioning without advice of counsel, then it is presumed that any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the 'inherently compelling pressures' and not the purely voluntary choice of the suspect."
486 U.S. at 680-81, 108 S.Ct. at 2097-98, 100 L.Ed.2d at 712-13
(1988).
Alabama courts have applied Edwards and have held that statements made in violation of the appellant's right to counsel are inadmissible. See Ex parte Johnson, 522 So.2d 234
(Ala. 1988). This court addressed this same issue in Arthur v.State, 575 So.2d 1165 (Ala.Cr.App. 1990), cert. denied,575 So.2d 1191 (Ala. 1991), and stated:
 "[T]he prosecution ha[s] the 'heavy burden' of overcoming the presumption, which was raised by [the appellant's] request for counsel, that [he] considered himself unable to deal with the pressures of custodial interrogation without legal assistance. '[The] discomfort [with the pressures of custodial interrogation] is precisely the state of mind that Edwards presumes to persist unless the suspect himself initiates further conversation about the investigation. . . .' Id. 486 U.S. at 684, 108 S.Ct. at 2099."
". . . .
 "In determining that the prophylactic rule of Edwards should have been followed here, we are guided by the following analysis set forth by the Court in Smith v. Illinois, 469 U.S. 91, 95, 105 S.Ct. 490, 492, 83 L.Ed.2d 488 (1984):
 " 'First, courts must describe whether the accused actually invoked his right to counsel. . . . Second, if the accused invoked his right to counsel, courts may admit his responses to further questions only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked.' (Citations omitted.)
 "Clearly, the prosecution had the burden of establishing that [the appellant] had the opportunity to consult with counsel prior to the . . . interrogation. 'If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.' Miranda v. Arizona, 384 U.S. at 475, 86 S.Ct. at 1628.
 " 'It is a well settled rule of law in Alabama that a statement made subsequent to arrest is prima facie involuntary and inadmissible at trial, and the state must demonstrate voluntariness *Page 231 
and a Miranda predicate in order to gain admission of the statement.'
 "Ex parte Johnson, 522 So.2d at 235-36 (quoting Crowe v. State, 485 So.2d 351, 359
(Ala.Cr.App. 1984), rev'd on other grounds, 485 So.2d 373 (Ala. 1985), cert. denied, 477 U.S. 909, 106 S.Ct. 3284, 91 L.Ed.2d 573 (1986) (citations omitted)). See also Ex parte Callahan, 471 So.2d 463, 464 (Ala.), cert. denied, 474 U.S. 1019, 106 S.Ct. 567, 88 L.Ed.2d 552 (1985). 'Confessions are presumed to be involuntary. . . .' Ex parte Shula, 465 So.2d 452, 453 (Ala. 1985). 'The record must affirmatively show that [the prosecution's] burdens have been met.' Ex parte Callahan, 471 So.2d at 471. Based upon these principles, we must conclude that, since the prosecution introduced nothing to the contrary, [the appellant] had no opportunity to consult with counsel; the presumption of the statement's inadmissibility was not rebutted."
575 So.2d at 1172-73.
Here, the appellant was clearly not afforded the opportunity to consult with counsel. Further, O'Shields did not initiate the dialogue with the authorities. Under the standards articulated in Edwards v. Arizona and Arthur, the appellant's confession was due to be suppressed.
Although we have held that the appellant's confession was wrongfully received into evidence because his Fifth Amendment right to counsel was violated, our analysis does not end.
 "The question becomes: Was the receipt of the statement into evidence harmless error? In Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the United States Supreme Court held that the harmless error doctrine could be applied to coerced confessions received into evidence at trial. That Court stated:
 " 'When reviewing the erroneous admission of an involuntary confession, the appellate court, as it does with the admission of other forms of improperly admitted evidence, simply reviews the remainder of the evidence against the defendant to determine whether the admission of the confession was harmless beyond a reasonable doubt.'
 "499 U.S. at 310, 111 S.Ct. at 1265, 113 L.Ed.2d at 332. (Emphasis added in Fisher.) 'In order for the harmless error doctrine to be applied in this situation, the evidence against the accused must be overwhelming.' McCray [v. State], 629 So.2d [729] at 732 [(Ala.Cr.App. 1993)]; Smith v. State, 623 So.2d 369, 372 (Ala.Cr.App. 1992), cert. denied, 510 U.S. 1030, 114 S.Ct. 650, 126 L.Ed.2d 607 (1993)."
Fisher v. State, 665 So.2d 1014, 1017-18 (Ala.Cr.App. 1995).
The evidence in support of the state's case, based primarily on the testimony of Nichols, Hemphill, Kynard, and David O'Shields, was sufficient to prove beyond a reasonable doubt that the appellant committed the crime charged. The trial court's admission of the appellant's confession was harmless beyond a reasonable doubt.
 II
The appellant next contends that because the evidence presented by the state was circumstantial, the evidence was not sufficient to support the jury's verdict.
 "When reviewing a challenge to the sufficiency of evidence, we accept 'as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.' Faircloth v. State, 471 So.2d 485, 489 (Ala.Cr.App. 1984), aff'd, 471 So.2d 493
(Ala. 1985). 'When the court is reviewing a conviction based upon circumstantial evidence, the question that must be answered is whether "the evidence adduced is consistent with guilt and inconsistent with any reasonable hypothesis that the [defendant] is innocent." ' Cagle v. City of Gadsden, 495 So.2d 1144, 1147 (Ala. 1986), quoting Ex parte Williams, 468 So.2d 99, 102 (Ala. 1985). 'Furthermore, we cannot substitute our judgment for that of the jury.' Owens v. State, 597 So.2d 734, 737 (Ala.Cr.App. 1992). 'Whether the circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis that of the defendant's guilt is a question *Page 232 
for the jury and not the court.' Cumbo v. State, 368 So.2d 871, 875 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979)."
Faust v. City of Gadsden, 639 So.2d 536, 538 (Ala.Cr.App. 1993).
Viewing the evidence in the light most favorable to the state, we conclude that there was sufficient evidence to support the jury's verdict.
The appellant further contends that the state failed to prove the necessary elements of the corpus delicti in order to sustain his conviction.
 "[T]he Alabama rule is that circumstantial evidence by itself is often satisfactory proof of the corpus delicti of a murder, if the totality of the facts presented would allow the jury to 'reasonably' infer the crime. In such cases the questions of a defendant's guilt must be submitted to the jury for their decision. Johnson v. State, 247 Ala. 271, 24 So.2d 17 (1945); Phillips v. State, 248 Ala. 510, 28 So.2d 542 (1946); Hoback v. State, Ala. Cr. App., 338 So.2d 439, cert. denied, Ala., 338 So.2d 444 (1976); Scroggins v. State, Ala. Cr. App., 341 So.2d 967, cert. denied, Ala., 341 So.2d 972 (1977)."
Taylor v. State, 405 So.2d 946, 949 (Ala.Cr.App.), writ quashed, 405 So.2d 951 (Ala. 1981). See also Tarver v. State,500 So.2d 1232 (Ala.Cr.App.), aff'd, 500 So.2d 1256 (Ala. 1986), cert. denied, 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685
(1987).
Here, the state presented sufficient circumstantial evidence to prove the corpus delicti of the murder charge. The trial court correctly submitted the case to the jury.
 III
The appellant next contends that he was denied effective assistance of counsel. Specifically, he contends that his trial counsel failed to move for a mistrial or to preserve a record of alleged prejudicial conduct of members of the victim's family that occurred in the presence of the venire.
 "For the appellant to succeed on his argument that his trial counsel was ineffective, he must meet the two-pronged test promulgated by the United States Supreme in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984). The appellant must show 1) that his trial counsel's performance was deficient and 2) that such deficient performance prejudiced his defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. Furthermore, 'when this court is reviewing a claim of ineffective assistance of counsel, we indulge a strong presumption that counsel's conduct was appropriate and reasonable.' Hallford v. State, 629 So.2d 6, 8 (Ala.Cr.App. 1992). The burden is on the appellant to show that his counsel's performance was deficient. Luke v. State, 484 So.2d 531
(Ala.Cr.App. 1985)."
Williams v. State, 641 So.2d 1305, 1307 (Ala.Cr.App. 1994).
The alleged conduct the appellant contends occurred is not contained in the record. The record reveals that the trial court acknowledged "two instances" that occurred during jury selection. The trial court informed the attorneys that they would be responsible for the actions of their witnesses. The record is silent as to what occurred during the proceedings.
 " 'This court cannot predicate error on matters not shown by the record, nor can we presume error from a silent record.' Smelcher v. State, 520 So.2d 229 (Ala.Cr.App. 1987); Abbott v. State, 494 So.2d 789 (Ala.Cr.App. 1986). 'Where the record is silent on appeal, it will be presumed that what ought to have been done was not only done, but rightly done.' Jolly v. State, 405 So.2d 76
(Ala.Cr.App. 1981); Watson v. State, 398 So.2d 320
(Ala.Cr.App. 1980), writ denied, 398 So.2d 332
(Ala.), cert. denied, 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981)."
Owens v. State, 597 So.2d 734, 736 (Ala.Cr.App. 1992).
The appellant has not shown that the performance of his counsel was deficient, therefore he could make no showing that his defense was prejudiced by deficient performance.
Further, "[e]very court has power to preserve and enforce order in its immediate *Page 233 
presence; to prevent interruption, disturbance, or hindrance to its proceedings; and to control all persons connected with a judicial proceeding before it." Clark v. State, 280 Ala. 493,497, 195 So.2d 786 (1967), appeal dismissed, cert. denied,387 U.S. 571, 87 S.Ct. 2071, 18 L.Ed.2d 967 (1967).
The appellant, acting pro se, further contends that he was denied effective assistance of counsel because, he says, his trial counsel did not request that the trial judge recuse himself, agreed to certain stipulations at trial, and did not file a motion to dismiss alleging a violation of due process. These issues of ineffective assistance of trial counsel were not first presented to the trial court and therefore have not been preserved for review by this court. Bolling v. State,624 So.2d 1136 (Ala.Cr.App. 1993).
Moreover, the trial court is in a better position than this court to determine whether the appellant's trial counsel's performance was deficient. The trial court denied the appellant's motion for new trial based on ineffective assistance of counsel. No error occurred here.
For the foregoing reasons, the judgment is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur, except COBB, J., who concurs specially with opinion.