Richard Eugene Gaddy was convicted of capital murder, committed during the course of a robbery, and was sentenced to death. The Court of Criminal Appeals affirmed his conviction and sentence. Gaddy v. State, 698 So.2d 1100 (1995). We have granted his petition for certiorari review. The facts of this case are adequately stated in the opinion of the Court of Criminal Appeals. After reviewing the record, the briefs of the parties, and the opinion of the Court of Criminal Appeals, we affirm.
Gaddy argues that the State failed to establish a proper predicate for the admission of an extrajudicial confession. The rule is that ' "[e]xtrajudicial confessions are prima facie
involuntary and inadmissible, and [that] the burden is on the State to prove that the confession was made voluntarily." ' Exparte Matthews, 601 So.2d 52, 53 (Ala. 1992) (quoting from Exparte Callahan, *Page 1152 471 So.2d 463, 464 (Ala. 1985)). To have the confession admitted into evidence, the State had to establish that the statement was made voluntarily. Ex parte Singleton, 465 So.2d 443, 445
(Ala. 1985).
Gaddy claims that the State failed to make a prima facie showing that the confession was voluntarily made, and thus that it did not overcome the general presumption against the admissibility of confessions. Gaddy correctly notes that the State had to prove that no one present at the interrogation improperly induced or coerced him into giving a confession.Ex parte Weeks, 531 So.2d 643, 645 (Ala. 1988); Bennefield v.State, 281 Ala. 283, 287, 202 So.2d 55, 59 (1967). In Weeks, the Court described the predicate the State must lay for the admission of a confession:
 "The burden is on the State to show proper predicates for the admission of an extra-judicial inculpatory statement, specifically, here, a lack of coercion or inducements. It is necessary for the State to show that neither Monley, Jones, nor Hall offered any inducement or coercion in soliciting the statement. Although Monley's admission to offering an inducement for the statement is sufficient to exclude it, the fact that the State did not offer proof that neither Hall nor Jones offered any inducement or coercion is likewise grounds for excluding it for lack of voluntariness."
531 So.2d at 645. However, the Court did not hold inWeeks that the only ways to lay the necessary predicate are as Gaddy suggests — namely, that the State either have one of the participants in the interrogation testify that no one in the room coerced or induced the confession or have all of the persons present in the room testify in court (although these ways are clearly the better practice). Rather, the State may meet its burden of proving lack of coercion or inducement by a variety of means, depending on the facts of the case. Griffinv. State, 500 So.2d 83, 90-91 (Ala.Crim.App. 1986); seeButler v. State, 646 So.2d 689, 690 (Ala.Crim.App. 1993) (to meet the burden of proof, "it is not necessary that every person who was present when a statement was made testify that it was made voluntarily").
In this case, the State met its burden in two ways: through questions to the lead interrogating officer and through its introduction of the signed and initialed Miranda statements. Gaddy claims that the prosecutor failed to specifically ask the lead interrogator, Officer George Booth, of the Saluda Law Enforcement Division (SLED), if the other participants in the interrogation coerced or induced Gaddy into confessing. However, this argument elevates form over substance, in light of Officer Booth's testimony:
 "Q. . . . [D]id you promise him anything or use any threats or force or violence or anything to get him to make this statement?
 "A. No, sir, we didn't. There was no coercion, no threats, no promises of reward or hope for reward."
(Emphasis added.) Booth's use of the plural "we" and his use of the phrase "there was no coercion, no threats, no promises of reward, or hope for reward," were sufficient to allow the court to conclude that no one present at the interrogation had attempted to induce or intimidate Gaddy into confessing.
As further support for its position, the State introduced forms containing Gaddy's sworn written confessions and a waiver of rights form, all of which were signed and initialed by Gaddy. The waiver-of-rights form contained the following statements:
 "I understand my rights as explained to me by Officer __________. I now state that I DO wish to answer questions at this time and that I DO NOT wish to have a lawyer here before or during questioning. "My decision to answer questions now, without a lawyer, is made freely and is my own choice. No one has threatened me or coerced me in any way or promised me special treatment to show my decision. To show my decision, I am signing my name in the space below."
(Emphasis added.) The last paragraph of Gaddy's first written confession, which was specifically initialed by Gaddy, stated the following:
 "I make this statement in the presence of Lieutenant George Booth of SLED [Saluda *Page 1153 
Law Enforcement Division], Chief Charles Johnson of the Johnston Police Department, Sergeant Larry Chapman of the Saluda County Sheriff's Department. I make this statement of my own free will and accord without reward or hope of reward. I have not been mistreated or threatened in any way. All of the above is the truth, the whole truth, and nothing but the truth so help me God."
The second signed statement, made by Gaddy the day following his arrest, included the following statement, which was also specifically initialed by Gaddy:
 "I declare that the following voluntary statement is made of my own free will without promise or hope of reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomever."
Through these waiver forms, the State made a prima facie showing that Gaddy agreed, when making the confession, that none of the persons involved in taking the confession had induced him to make it. In fact, the statement in the first confession specifically lists all three of the persons present at the interrogation.
When the confession was offered into evidence, Gaddy did not object on the basis that the State had not laid a proper predicate; however, we must still review the circuit court's ruling admitting the confession, for plain error. Rule 39(k), Ala.R.App.P.; Ex parte Coral, 628 So.2d 1004, 1006 (Ala. 1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61
(1994). Booth's answer to the State's question ("No sir, we didn't [promise him anything]"), buttressed by the signed waiver forms and confessions, presented the circuit court with sufficient evidence from which it could conclude that the prosecution had made a prima facie showing that no one involved in the interrogation had induced or coerced Gaddy into confessing. We therefore hold that the circuit court did not err to reversal in concluding that the State had made an adequate initial showing that the extrajudicial confession was made voluntarily.
As a further challenge to the circuit court's holding that the the State made a showing of voluntariness sufficient to support the admission of the confession into evidence, Gaddy argues that the lead interrogating officer, Officer Booth, induced him to confess. Officer Booth told Gaddy, before Gaddy confessed, that he would tell the court of Gaddy's cooperation if he confessed to the murder. Gaddy contends that this statement alone was enough to render the subsequent confession involuntary.
This Court, in Ex parte Weeks, stated the test for determining whether a confession is voluntary:
 "The true test of voluntariness of extra-judicial confessions is whether, under all the surrounding circumstances, they have been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor; and if so, whether true or false, such confessions must be excluded from the consideration of the jury as having been procured by undue influence."
531 So.2d 643, 644 (Ala. 1988) (quoting an earlier case of this Court). To make a confession involuntary, an interrogator's statement must be stronger than one that just "convey[s] the idea to [a suspect] that it would be best or better to tell the truth if he made a statement." Wallace v.State, 290 Ala. 201, 206, 275 So.2d 634, 638 (1973).
However, when reviewing statements made by police officers, the court does not review them in a vacuum; in each case, the court must analyze the confession by looking at the totality of the circumstances. Ex parte Matthews, 601 So.2d 52, 54
(Ala. 1992), cert. denied, 505 U.S. 1206, 112 S.Ct. 2996,120 L.Ed.2d 872 (1992). Taken by itself, Officer Booth's statement could be interpreted as an inducement. Officer Booth stated the following to the court, in a sworn statement given by telephone:
 "Q. . . . [D]id you promise him anything or use any threats or force or violence or anything to get him to make this statement? *Page 1154 
 "A. No, sir, we didn't. There was no coercion, no threats, no promises of reward or hope for reward.
 "Mr. Gaddy and I talked at great length about the other crimes. And we got to this one, we had kind of — he had a feeling for how I did business, and I understood him. He was — I found him to be truthful, and I didn't — you know, there was no promises made.
 "I told him that when this case — when and if this case came to court, that I would not have any problem relating to the Judge or a jury that he was cooperative, and found him to be truthful."
While a statement that taken literally appears to make a promise can make a confession involuntary, it does not necessarily do so, unless the evidence shows that the statement "operat[ed] to produce in the mind of the prisoner apprehension of harm or hope of favor." Weeks, 531 So.2d at 644. The Court of Criminal Appeals explained this concept inJackson v. State, 562 So.2d 1373, 1385-86 (Ala.Crim.App. 1990) (quoting from 23 C.J.S. Criminal Law § 906 (1989)):
 " 'The issue is whether defendant's admissions made subsequent to the promise were the product of defendant's free will, or were coerced through the overbearing of defendant's free will, for while the courts are careful to exclude confessions obtained by promises, this does not require the exclusion of what are, in fact, voluntary statements. Under this rule, what renders the confession involuntary is that it was obtained as the result of the promise, i.e., the confession must have been induced by the promise, or made in reliance on such inducement, and, in order for the confession to be held involuntary, a causal connection must be shown between the alleged promise and defendant's decision to confess.
 " 'In other words, to be inadmissible under this rule, the confession must be so connected with the promise as to be the consequence of it. Conversely, a voluntary statement or confession made by defendant based upon his own conclusion that it would be in his best interest or work to his benefit does not render such statement or confession inadmissible.' "
The key to our analysis of promises or inducements is to determine whether those promises or inducements actually caused the confession, not just whether the promises or inducements were made by the officer. However, in its opinion affirming Gaddy's conviction, the Court of Criminal Appeals states too broadly that a confession should not be excluded unless the evidence shows that the interrogator "bargained with" the defendant for the confession. 698 So.2d at 1113. While the use of the word "bargain" may be helpful in determining whether a confession was voluntary, it could also confuse some into thinking that some sort of protracted negotiation is needed to make a confession involuntary. This Court stated in Matthews:
 "[I]t is well grounded in Alabama law that '[i]n order to be admissible a confession must be free and voluntary and cannot be the result of any direct or implied promises, however slight.' Ex Parte Johnson, 522 So.2d 234, 237 (Ala. 1988) (quoting Eakes v. State, 387 So.2d 855, 859
(Ala.Crim.App. 1978))."
601 So.2d at 54 (emphasis added). One statement by an interrogator can render a confession involuntary, if that statement actually induces or causes the defendant to confess. See Weeks, 531 So.2d at 644. Therefore, we expressly disapprove of the test used by the Court of Criminal Appeals, that an interrogator's statement renders a confession involuntary only where it is shown that the interrogator "bargained with" the defendant.[1]
Determining whether the statement induced the confession brings into play the totality-of-the-circumstances test. This test requires a court to consider a wide variety of factors when determining whether a confession was voluntary: *Page 1155 
 "The factual inquiry [of the totality-of-the-circumstances test] centers on the conduct of the law enforcement officials in creating pressure and the suspect's capacity to resist that pressure. . . . The defendant's personal characteristics as well as his prior experience with the criminal justice system are factors to be considered in determining his susceptibility to police pressures."
Jackson, 562 So.2d at 1380-81 (citations omitted). Included in the analysis of the totality of the circumstances are such things as the defendant's education and intelligence (Arnold v.State, 348 So.2d 1092 (Ala.Crim.App.), cert. denied,348 So.2d 1097 (Ala. 1977)), and whether the defendant was intoxicated or under the influence of a narcotic at the time of the confession (Boggan v. State, 455 So.2d 228
(Ala.Crim.App. 1984)).
We agree with the Court of Criminal Appeals that the circuit court had before it sufficient evidence to reasonably find that Gaddy's confession was voluntarily given. Gaddy himself initiated the conversation about the murder, through his response to Officer Booth's question about how Gaddy came into possession of the victim's automobile. Booth testified in the pre-trial interview on the telephone as to the following exchange:
 "At that time, I asked Mr. Gaddy about the car that he was operating. He said he didn't know. And I advised him that if need be, I would get additional agents and we would go down and canvas the Aiken area and adjacent areas to find out about his car.[2]
 "He advised me that it involved a more serious crime.
 "At that time, I again took a 'rights form' and wrote in 'murder'; advised Mr. Gaddy of his rights. And he related to me — gave me a statement regarding his involvement in the death of a schoolteacher in the town of Birmingham; the dates he was there, what actually took place, how he met this gentleman. Mr. Gaddy advised that he was hitchhiking on the interstate and was picked up by this man."
The officer did not tell Gaddy that failure to confess would be damaging to his case or that his sentence would be reduced if he confessed; he merely told him that he would not have a problem telling the court that Gaddy was cooperative in the interrogation. Gaddy claims that, like statements considered in Weeks and in Womack v. State, 281 Ala. 499,205 So.2d 579 (1967), Officer Booth's statement carried the obvious implication that if Gaddy confessed he would get a lighter sentence or the court would be lenient. However, Officer Booth's statement is distinguishable from the statements inWeeks and Womack because, in each of those earlier cases, the Court held not only that the police officer made the statement with the intent to induce a confession, but also that the defendant was thereby induced to confess. Weeks, 531 So.2d at 644; Womack, 281 Ala. at 506, 205 So.2d at 589.[3]
Conversely, in this case, the State presented sufficient evidence to support the circuit court's finding that the statement by Officer Booth did not cause Gaddy to confess to the murder or to think that he would receive a lighter punishment if he did confess.
Gaddy did not object to the admission of the confession on the ground of improper inducement; nevertheless, because Gaddy received the death penalty, we review the proceedings of the circuit court for "plain error." Rule 39(k), Ala.R.App.P. After reviewing the circumstances surrounding the confession, we hold that the circuit judge did not commit *Page 1156 
plain error in determining that Gaddy's confession was voluntarily given.[4]
Gaddy further argues that the circuit judge improperly instructed the jury that he had already determined that the confession was voluntary. The entirety of the circuit judge's instruction on this subject follows:
 "THE COURT: All right. With regard to the statements, folks, as reflected in the exhibit numbers the court reporter gave you, consider all of the facts and circumstances surrounding the taking of the alleged confession or statement in determining the weight or credibility which you give to the statement. In exercising your exclusive prerogative of determining credibility of the evidence or the weight to which it is properly entitled, you may consider the circumstances under which the statement was obtained, including the situation and mutual relation of the parties. While I determine the voluntariness of the statement and thus you were allowed to hear it, the jury determines the weight or credibility and may disregard the defendant's statements which you deem to be unworthy of belief or in which you entertain a reasonable doubt as to its truth."
(Emphasis added.) Gaddy quotes the emphasized portion of the instruction as support for his assertion that the circuit judge's instruction was erroneous.
The law concerning how the voluntariness of a confession is determined was properly outlined by Justice Lawson inDuncan v. State, 278 Ala. 145, 176 So.2d 840 (1965). That case was this Court's first response to the mandate of the United States Supreme Court in Jackson v. Denno, 378 U.S. 368,84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), that trial judges make a determination, outside the presence of the jury, on the voluntariness of a defendant's confession. In Duncan, this Court adopted the "orthodox procedure" for determining whether a confession was voluntary. Justice Lawson described that procedure as follows:
 "We are clear to the conclusion that whenever a motion is made for the question of the voluntariness of the confession to be determined outside the presence of the jury, the motion should be granted. In such a hearing, the trial judge sitting alone should make a determination upon a proper record of the issue of voluntariness. At such a hearing the defendant may take the stand and testify for the limited purpose of making a record of his version of the facts and circumstances under which the confession was obtained. By so doing, the defendant will not waive his right to decline to take the stand in his own defense on the trial in chief nor will he waive any of the other rights stemming from his choice not to testify. If the confession is held voluntary and admitted, the jury's consideration of that confession and surrounding circumstances shall proceed in accordance with the 'Orthodox' procedure, that is, the jury considers the voluntariness as affecting the weight or credibility of the confession."
Duncan, 278 Ala. at 165, 176 So.2d at 859 (emphasis added).
Justice Shores, in Ex parte Singleton, 465 So.2d 443
(Ala. 1985), further clarified this concept of bifurcating the determination of voluntariness of a confession:
 "Correctly stated, whether a confession was voluntary rests initially with the trial court; once the trial judge makes the preliminary determination that the confession was voluntary, it then becomes admissible into evidence. Thereafter, the jury makes a determination of voluntariness as affecting the weight and credibility to be given the confession. Lewis v. State, 295 Ala. 350, 329 So.2d 599 (1976)."
Singleton, 465 So.2d at 446. (Emphasis omitted.) Thus, for more than 30 years Alabama has had an established procedure in effect for determining whether a confession *Page 1157 
was voluntary, a procedure that provides a significant role for both the judge and the jury.
Notwithstanding the fact that the trial court does have to make an initial determination of voluntariness, this Court has also held that "[i]t is improper for a trial judge to disclose to the jury that he made a preliminary determination that a confession was voluntary and, therefore, admissible."Singleton, 465 So.2d at 446. This rule has been reiterated many times by the Court of Criminal Appeals. See, e.g., Aultman v.State, 621 So.2d 353 (Ala.Crim.App. 1992), cert. denied,510 U.S. 954, 114 S.Ct. 407, 126 L.Ed.2d 354 (1993); Clark v.State, 621 So.2d 309 (Ala.Crim.App. 1992); Bush v. State,523 So.2d 538,560 (Ala.Crim.App. 1988).
In light of these precedents, we agree with Gaddy that this particular instruction was erroneous, because the judge told the jury that he had determined that the confession was voluntary. This error comes from the influence that a statement by the judge, to the effect that he has already determined that a confession was voluntary, may have on the jury; such a statement could cause the jury to assume that the confession was voluntary and thereby to ignore its duty to consider whether the confession was voluntary.
However, because Gaddy did not object to this instruction, we review it only for plain error. Rule 39(k), Ala.R.App.P. As support for his argument that the error constituted plain error, Gaddy cites Bush v. State, supra. In Bush, the Court of Criminal Appeals, with an opinion by Judge Patterson, reversed a conviction in a capital case, based upon a violation of the rule stated in Singleton, supra. The circuit judge in that case instructed the jury as follows:
 "You have heard testimony in the case about a confession. The law says that the Court determines whether a confession is admitted into evidence. The Court determines whether a confession was voluntary or not, whether it was improperly induced and that kind of thing. The Court has ruled that the confession was voluntary. That is the Court's prerogative. The Court has listened and ruled on that in proceedings that took place prior to today. The Jury has the right to consider the confession in light of the circumstances surrounding it. Although I have ruled that it is voluntary, the Jury has the prerogative of evaluating what weight to give it. But when the Court — when I found it was not improperly induced, the Jury is not entitled to disregard the Court's admitting it. You are not to determine whether the Court's action in finding that it was voluntary is correct or not.
But you are entitled to consider all of the circumstances surrounding the confession in determining the credibility of that evidence along with the credibility of any other evidence and determining what weight, if any, that you are going to give it."
523 So.2d at 558 (emphasis added). The Court of Criminal Appeals held that the error caused by the erroneous instruction rose to the level of plain error and thus required a new trial.
We agree with the State that the instruction given inBush and the one given in this case are distinguishable. Clearly, as Judge Patterson wrote, the circuit judge in Bush
committed plain error by specifically charging the jury that it was "not entitled to disregard the Court's admitting [the confession]." Id. at 558. Thus, the judge in Bush, through his instruction, took the issue of voluntariness of the confession away from the jury.[5] *Page 1158 
This case is unlike Bush, because in this case the judge simply charged the jury that he had made an initial determination that the confession was voluntary. Although the judge erred in doing so, he also specifically told the jury that it was to determine the issue of "weight or credibility" of the confession and that it was free to "disregard the defendant's statements which you deem to be unworthy of belief or in which you entertain a reasonable doubt as to its truth." As this Court and the Court of Criminal Appeals have held, if the circuit court makes it clear in its instruction that the jury was "to ultimately determine whether the confession was voluntary," then the error in instructing the jury that the court had already made a determination of voluntariness may be found to be harmless. Singleton, supra, at 446; see Aultman, supra, at 355, and Clark, supra, at 324. The jury was informed that it could disregard Gaddy's confession entirely if it decided to give no weight to the confession or if it found the State's witnesses to be unworthy of belief.
Again, because Gaddy did not object to the giving of the instruction, we review the instruction only for plain error. We strongly reiterate that the instruction given by the judge was erroneous, because a judge should not inform the jury that the judge has already determined the confession to be voluntary. Singleton, supra. In some cases, like Bush, supra, the charge can be so misleading or the circumstances can be such that the error will not be harmless. While we agree with Gaddy that the instruction was partially erroneous, we hold that the error does not rise to the level of "plain error" that would justify a reversal of his conviction.
Gaddy asserts that the circuit court and the State committed other errors; his assertions are outlined in the Court of Criminal Appeals' opinion. However, we find no error in the opinion of that court regarding these remaining issues, and do not think that we could add anything of significance to the rationale offered by that court. As required by Ala. Code 1975, § 13A-5-53, we have reviewed the entire record, including the circuit judge's order, the psychiatric evaluations, and the opinion of the Court of Criminal Appeals upholding the death sentence. This review shows us that the sentence was not the result of any "passion, prejudice, or any other arbitrary factor." § 13A-5-53(b)(1). We conclude that the trial court and the Court of Criminal Appeals properly weighed the mitigating and aggravating circumstances. Finally, we hold that those courts did not err in determining that Gaddy's sentence of death was proper and proportional to the penalty imposed in similar cases. § 13A-5-53(b)(3). Accordingly, the judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, SHORE HOUSTON, KENNEDY, COOK,* BUTTS, and SEE,* JJ., concur.
* Although Justice Cook and Justice See were not present at oral argument, they have listened to the tape of oral argument.
[1] We note that the Court of Criminal Appeals subsequently used this "bargained with" test in another opinion released while Gaddy's certiorari review was pending in this Court. See McLeodv. State, [Ms. CR-95-1280, October 11, 1996 ___ So.2d ___ (Ala.Crim.App. 1996).
[2] Officer Booth confronted Gaddy with the fact that he intended to find out about the car through his own investigation. This representation by Officer Booth was appropriate during the interrogation. The Court of Criminal Appeals held in Jackson v.State, 562 So.2d at 1382, that "[c]onfronting a defendant with evidence of guilt is not coercion on the part of the police and does not render a subsequent confession involuntary." It is equally true that an officer can permissibly tell a defendant that he will find out the truth without a confession, so long as the officer does not indicate that failure to confess will prejudice the defendant in a subsequent trial. See Matthews, 601 So.2d at 55.
[3] Indeed, in Womack evidence indicated that the sheriff told the defendant, "It will go lighter on you if you make a statement"; this statement by the sheriff necessarily gave the defendant a hope of a favor, in the form of a lighter sentence in exchange for the confession. 281 Ala. at 505, 205 So.2d at 589.
[4] Another factor that lends credence to the circuit judge's holding that the statement by the police officer did not induce Gaddy to confess is Gaddy's criminal experience. Jackson, 562 So.2d at 1373. He had previously been convicted of a variety of offenses, from shoplifting to burglary and armed robbery. Because of Gaddy's experience with the criminal justice system, the circuit court could have reasonably found a lower probability that Gaddy was induced into a confession by Officer Booth's comment than if this had been Gaddy's first arrest and interrogation.
[5] We note that the language of this instruction in Bush is similar to the language of C. Gamble, McElroy's AlabamaEvidence § 200.02(10) (5th ed. 1996), which states the following:
 "If the trial judge finds that a confession was not improperly induced, the jury is not permitted to determine whether the judge's action was correct. But, of course, the jury has the right to give no weight to the confession if they think that it is entitled to no credibility."
Gamble cites Roberts v. State, 258 Ala. 534, 538, 63 So.2d 584,587 (1953), as support for this proposition. The exact question whether the jury is permitted to consider "whether the judge's action was correct" is not presented here, because the circuit judge did not instruct the jury that it could not disregard his determination that Gaddy's confession was voluntary. Nevertheless, we note that the rule is more correctly stated inDuncan, Singleton, and Bush than in Roberts and McElroy'sAlabama Evidence.