[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 933 
The appellant, Nathaniel Wigfall, was convicted of two counts of first-degree robbery, a violation of § 13A-8-41, Code ofAlabama 1975. He was sentenced to 20 years' imprisonment for each count, those sentences to run concurrently.
The evidence presented at trial established that on the evening of November 1, 1994, 14-year-old Joe Flucker and 15-year-old Carl Brown were walking home from basketball practice. As they walked home, a white Buick Park Avenue automobile with tinted windows passed them at least twice. A short time later, the driver of the Buick stopped the vehicle, and one of the passengers asked the boys where the nearest Hardee's restaurant was located.
As Flucker and Brown gave directions, two passengers got out. While one of the individuals pointed a gun at Flucker and Brown, the other individual robbed Flucker of his tennis shoes, a denim jacket, and a book bag containing a pair of jeans, several books, keys, and a lunch card. Brown was similarly relieved of his book bag, which contained shorts, a T-shirt, socks, books, keys, and a lunch card. The individuals got back into the Buick and sped away. As the vehicle fled the scene, Brown noted the car's tag number.
Brown and Flucker ran home and telephoned the police to report the incident. Capt. Neil Forrester of the Headland Police Department traced the Buick's tag number to Serena Reeves, the appellant's sister. Ms. Reeves advised Forrester that she had lent her car to the appellant on November 1, 1994. She further advised Forrester that her brother still lived with their mother, and gave him the address where the appellant could be found.
Forrester went to the residence of Christine Wigfall, the appellant's mother. He advised Ms. Wigfall that he believed that her son had been involved in a robbery that he was investigating. After Forrester left, Ms. Wigfall questioned her son, and he produced some of the stolen items. Ms. Wigfall then contacted Forrester.
On November 10, 1994, Forrester returned to the Wigfall home to interview the appellant. He first advised the appellant, who was 16 years old, of his constitutional rights under *Page 934 Miranda[1] and Rule 11, Ala.R.Juv.P. The appellant then executed a waiver of rights form and made a statement admitting his involvement in the robbery of Brown and Flucker. Specifically, the appellant told Forrester that he was the driver of the car. The appellant's mother was present when the appellant was advised of his rights. She also signed the waiver of rights form, and was present while the appellant gave a recorded statement. The appellant was subsequently charged with two counts of first-degree robbery.
 I.
The appellant contends that the trial court erred in denying his application for youthful offender status because, he says, the trial court based its decision solely on the charge itself, instead of considering all relevant factors.
We would first note that the appellant did not object to the trial court's denial of his application for youthful offender status. Therefore, this issue is not preserved for appellate review. See Ford v. State, 645 So.2d 317, 318
(Ala.Cr.App. 1994); Carter v. State, 627 So.2d 1027, 1028
(Ala.Cr.App. 1992), aff'd, 627 So.2d 1030 (Ala. 1993).
Moreover, even if this issue had been properly preserved, the appellant's contention must fail.
 "In determining whether to treat a defendant as a youthful offender, the trial court has nearly absolute discretion. Morgan v. State, 363 So.2d 1013 (Ala.Cr.App. 1978); see also, Ex parte Farrell, 591 So.2d 444, 449-50, n. 3 (Ala. 1991). There is no set method for considering a motion requesting such treatment. Edwards v. State, 294 Ala. 358, 317 So.2d 512 (1975). However, the Youthful Offender Act, § 15-19-1, Ala. Code 1975, requires that the court conduct a factual investigation into the defendant's background. Ware v. State, 432 So.2d 555 (Ala.Cr.App. 1983). Generally, the trial court considers the nature of the crime charged, any prior convictions, the defendant's age, and any other matters deemed relevant by the court. Clemmons v. State, 294 Ala. 746, 321 So.2d 238
(1975). Moreover, the trial court need not articulate on the record its reasons for denying the defendant youthful offender status. Garrett v. State, 440 So.2d 1151, 1152-53 (Ala.Cr.App. 1983), cert. denied (Ala. 1983). Accord, Goolsby v. State, 492 So.2d 635 (Ala.Cr.App. 1986)."
Reese v. State, 677 So.2d 1239, 1240 (Ala.Cr.App. 1995)
The record does not support the appellant's contention that the trial court considered only the offense itself in determining whether to grant youthful offender status. Indeed, it is clear to us that the trial court considered the facts upon which the robbery charge was based, as well as other factors. During the hearing on the appellant's youthful offender application, the trial court heard argument on the seriousness of the charge, the nature of the circumstances upon which the charge was based, the appellant's age, and other relevant factors concerning the appellant and his home life. Where the record does not support the contention that youthful offender status was denied solely on the basis of the crime charged, this court will not reverse the trial court's decision to deny youthful offender status. Burks v. State,600 So.2d 374, 378 (Ala.Cr.App.), opinion after remand, 600 So.2d 387
(Ala.Cr.App. 1991). Accordingly, the trial court did not abuse its discretion in denying the appellant's application for youthful offender status.
 II.
The appellant also argues that the trial court committed reversible error by denying his motion to suppress the recorded statement that he gave to Captain Forrester on November 10, 1994. We disagree. Our examination of the record clearly establishes that the appellant's statement was knowingly, intelligently, and voluntarily made.
It has long been the law that a confession is prima facie
involuntary and inadmissible, and that before a confession may be admitted into evidence, the burden is upon the State to establish voluntariness and *Page 935 
a Miranda predicate. Jackson v. State, 562 So.2d 1373, 1380
(Ala.Crim.App. 1990). A two-pronged test is used to determine whether an accused's statement is admissible. First, the trial court must determine whether the accused was informed of hisMiranda rights. Second, the trial court must determine whether the accused voluntarily and knowingly waived his Miranda rights before making his statement. Holder v. State, 584 So.2d 872,878 (Ala.Crim.App. 1991); Carpenter v. State,581 So.2d 1277, 1278 (Ala.Crim.App. 1991).
When the accused is a juvenile, the procedure varies slightly. "An extrajudicial statement made by a child may be admissible if given by the child in accordance with the requirements of the Constitution and the prevailing case law as expressed by the appellate courts." Rule 21, Ala.R.Juv.P. Before obtaining any statement from a juvenile defendant, law enforcement officers must meet certain requirements: (1) the juvenile must be informed of his or her Miranda rights; (2) the interrogating officer must ensure that the juvenile both understood those rights and voluntarily waived them; and (3) the interrogating officer must advise the juvenile that if a parent is not present, the juvenile has a right to communicate with a parent. See Rule 11, Ala.R.Juv.P.; Cauley v. State,681 So.2d 1105, 1107 (Ala.Cr.App. 1996).
In this case, Capt. Forrester testified that the appellant was informed of his Miranda rights, as well as his rights under Rule 11, Ala.R.Juv.P. A copy of the explanation of rights and the accompanying waiver of rights form was introduced into evidence during the appellant's trial, and is contained in the record on appeal. Indeed, the appellant does not appear to dispute that he was informed of his rights. Thus, the first prong of the test was established.
Once the first prong of the test is met, the court's attention must then turn to whether, after having been informed of his rights, the accused made a knowing and voluntary waiver of those rights. The appellant contends that he did not make a knowing and voluntary waiver of his rights because his waiver and his subsequent statement were based on Capt. Forrester's promise that if he made a statement and returned the victim's property, then he would not be prosecuted. This issue was recently addressed by the Alabama Supreme Court in Ex parteGaddy, 698 So.2d 1150 (Ala. 1997):
 "This Court, in Ex parte Weeks, [531 So.2d 643
(Ala. 1988)], stated the test for determining whether a confession is voluntary:
 " 'The true test of voluntariness of extra-judicial confessions is whether, under all the surrounding circumstances, they have been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor; and if so, whether true or false, such confessions must be excluded from the consideration of the jury as having been procured by undue influence.'
 "531 So.2d 643, 644 (Ala. 1988) (quoting an earlier case of this Court). To make a confession involuntary, an interrogator's statement must be stronger than one that just 'convey[s] the idea to [a suspect] that it would be best or better to tell the truth if he made a statement.' Wallace v. State, 290 Ala. 201, 206, 275 So.2d 634, 638 (1973).
 "However, when reviewing statements made by police officers, the court does not review them in a vacuum; in each case, the court must analyze the confession by looking at the totality of the circumstances. Ex parte Matthews, 601 So.2d 52, 54
(Ala. 1992), cert. denied, 505 U.S. 1206, 112 S.Ct. 2996, 120 L.Ed.2d 872 (1992). . . .
". . . .
 "While a statement that taken literally appears to make a promise can make a confession involuntary, it does not necessarily do so, unless the evidence shows that the statement 'operat[ed] to produce in the mind of the prisoner apprehension of harm or hope of favor.' Weeks, 531 So.2d at 644. The Court of Criminal Appeals explained this concept in Jackson v. State, 562 So.2d 1373, 1385-86 (Ala.Cr.App. 1990) (quoting from 23 C.J.S. Criminal Law § 906 (1989)):
 " 'The issue is whether defendant's admissions made subsequent to the promise *Page 936 
were the product of defendant's free will, or were coerced through the overbearing of defendant's free will, for while the courts are careful to exclude confessions obtained by promises, this does not require the exclusion of what are, in fact, voluntary statements. Under this rule, what renders the confession involuntary is that it was obtained as the result of the promise, i.e., the confession must have been induced by the promise, or made in reliance on such inducement, and, in order for the confession to be held involuntary, a causal connection must be shown between the alleged promise and defendant's decision to confess.'
 " 'In other words, to be inadmissible under this rule, the confession must be so connected with the promise as to be the consequence of it. Conversely, a voluntary statement or confession made by the defendant based upon his own conclusion that it would be in his best interest or work to his benefit does not render such statement or confession inadmissible.'
 "The key to our analysis of promises or inducements is to determine whether those promises or inducements actually caused the confession, not just whether the promises or inducements were made by the officer."
698 So.2d at 1153-54.
Whether a statement or promise caused the accused to waive his Miranda rights and confess is determined by the totality of the circumstances of each case. Gaddy, supra. The Court, inGaddy, determined that the officer's statements did not induce Gaddy to confess. All the officer said was that he would not have a problem telling the trial judge that Gaddy was cooperative during the interrogation. The Alabama Supreme Court held that this statement, when considered in context, did not render Gaddy's confession involuntary. Thus, Gaddy's confession was properly received into evidence.
A similar situation was addressed in Dixon v. State,588 So.2d 903 (Ala. 1991). In Dixon, a juvenile defendant was taken into custody on suspicion of rape and burglary. After the victim picked him out of a line-up, police informed him of his rights under Rule 11, Ala.R.Juv.P. The defendant waived his rights and confessed to breaking into the house and raping the victim. At trial, the juvenile contended that his confession was the product of promises made by an interrogating officer that he would not be treated as an adult if he confessed. The officers' testimony, however, differed from that of the defendant. They testified that, although one of them said something to the effect that if the defendant made a statement, the defendant could be kept in the juvenile system, no one ever told the defendant that if he did not make a statement he would be treated as an adult. Moreover, the officers testified that the defendant's statement was voluntary and given of his own free will. 588 So.2d at 907.
The Alabama Supreme Court agreed, holding that, based on the totality of the circumstances, the juvenile defendant's confession was voluntary. The Court noted that "[w]here the evidence of voluntariness is conflicting, and even where there is credible testimony to the contrary, the trial judge's finding of voluntariness must be upheld unless palpably contrary to the weight of the evidence." 588 So.2d at 908, quoting Carr v. State, 545 So.2d 820, 824 (Ala.Cr.App. 1989).
"The trial judge need only be convinced from a preponderance of the evidence to find a confession to have been voluntarily made." Jackson v. State, 516 So.2d 726, 741 (Ala.Cr.App. 1985), citing Harris v. State, 420 So.2d 812, 814 (Ala.Cr.App. 1982). A trial court's determination that an accused's statement was knowingly and voluntarily made will not be disturbed on appeal unless the determination is contrary to the great weight of the evidence or is manifestly wrong. Woods v. State, 592 So.2d 631,634 (Ala.Cr.App.), writ quashed, 592 So.2d 636 (Ala. 1991).
In this case, Capt. Forrester's testimony established: (1) that he had read and had explained a waiver of rights form to the appellant; (2) that the appellant had indicated that he understood his rights and the contents of the waiver form; and (3) that the appellant and his mother had signed the *Page 937 
waiver of rights form before the appellant gave a statement. Capt. Forrester further testified that he never told the appellant that all charges would be dropped if he made a statement and/or returned the stolen property. Given these facts, the trial court correctly determined that the appellant's statement was knowingly and voluntarily made and was thus admissible into evidence.
In the alternative, the appellant contends that his decision to confess was not based on promises made to him, but rather on statements that Capt. Forrester had made to his mother the preceding evening. Again, the evidence is conflicting as to what was said between Forrester and Ms. Wigfall. Capt. Forrester testified that he did not recall the exact words he used when discussing the appellant's situation with Ms. Wigfall; however, he stated that he probably told her the same thing he told all juveniles and their parents — that he would try to help them, but that they first had to help themselves. Moreover, Forrester categorically denied telling Ms. Wigfall that her son would not be prosecuted if he returned the stolen property.
Ms. Wigfall's testimony was considerably more ambiguous, and was, at times, inconsistent. She testified that Forrester told her that her son would not be prosecuted if he returned the stolen property. However, she also testified that she told Capt. Forrester that she was not going to tolerate any wrongdoing by her son. Ms. Wigfall further admitted that she advised her son to talk to the police because she wanted to know what had happened, and because she felt like the officers needed to "get to the bottom of things."
Our examination of the record convinces us that the actions of the appellant's mother, not those of Capt. Forrester, resulted in the appellant's confession. So long as police or law enforcement officials do not incite or coach family members to elicit a confession from the accused, the fact that a defendant elects to confess after conferring with family members does not render a confession involuntary. SeeGilchrist v. State, 585 So.2d 165, 176-77 (Ala.Cr.App. 1991), citing People v. Lucas, 132 Ill.2d 399, 139 Ill. Dec. 447, 454,548 N.E.2d 1003, 1010 (1989).
Furthermore, Capt. Forrester's testimony, together with the contradictory testimony offered by Ms. Wigfall, compelled the trial court to determine which witness was more credible, much the same way the trial court did in Rutledge v. State,651 So.2d 1141 (Ala.Cr.App. 1994). In upholding the trial court's determination, we noted:
 "[T]he evidence concerning the alleged promise to drop other cases against the appellant was in sharp conflict: The appellant's mother testified that the promise was made by the officers to her and was communicated by her to the appellant, while both of the officers who questioned the appellant flatly denied that any inducements of any kind were offered to the appellant or to his mother. '[C]onflicting evidence given at [a] suppression hearing presents a credibility choice for the trial court.' Atwell v. State, 594 So.2d 202, 212 (Ala.Cr.App. 1991), cert. denied, 594 So.2d 214 (Ala. 1992). '[A] trial court's ruling based upon conflicting evidence given at a suppression hearing is binding on this Court, and is not to be reversed absent a clear abuse of discretion.' Jackson v. State, 589 So.2d 781, 784
(Ala.Cr.App. 1991) (citations omitted)."
651 So.2d at 1144-45.
Based on the foregoing, the trial court correctly determined that the appellant's confession was knowingly, intelligently, and voluntarily made. Accordingly, the confession was properly admitted.
 III.
The appellant further contends that the state failed to present sufficient evidence to support his conviction for first-degree robbery. An examination of the record establishes otherwise. In deciding whether the state presented sufficient evidence to support a conviction, this Court must view the evidence in the light most favorable to the prosecution.Bayhi v. State, 629 So.2d 782, 788 (Ala.Cr.App. 1993). We must accept as true evidence introduced by the prosecution, make all legitimate inferences from that evidence, and consider that evidence in the light most favorable to the prosecution.McKinney *Page 938 v. State, 654 So.2d 95, 99 (Ala.Cr.App. 1995); Johnson v. State,623 So.2d 444, 447 (Ala.Cr.App. 1993).
A defendant commits the crime of robbery in the first degree if "in the course of committing a theft he . . . uses force against the person of the owner or any person present with intent to overcome his [or her] physical resistance," and the defendant "is armed with a deadly weapon or dangerous instrument" or "causes serious physical injury to another."Watkins v. State, 565 So.2d 1227, 1231 (Ala.Cr.App. 1990). Even if the accused does not personally commit the offense, he or she may be held "legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense . . . [h]e aids or abets such other person in committing the offense." §13A-2-23, Code of Alabama 1975. The phrase "aids and abets" encompasses all assistance rendered, Moody v. State,615 So.2d 126, 128 (Ala.Cr.App. 1992), including serving as the "wheel man"/chauffeur for the defendant's companions. See Browning v.State, 429 So.2d 653, 654 (Ala.Cr.App. 1982); Webber v. State,376 So.2d 1118, 1127 (Ala.Cr.App.), cert. denied,376 So.2d 1129 (Ala. 1979).
The common enterprise defined in § 13A-2-23 necessary to support a conviction may be entered into suddenly, without preparation or plan, and may be established "by circumstantial evidence or inferred from the conduct of the participants."Sanders v. State, 423 So.2d 348, 351 (Ala.Cr.App. 1982). To sustain a conviction for first-degree robbery, the state need show only that the accused was aware that one of the participants in the robbery was "armed with the gun during the actual commission of the robbery." Ex parte Hannah,527 So.2d 675, 677 (Ala. 1988), on remand, 527 So.2d 678
(Ala.Cr.App. 1988). Moreover, "it is immaterial which one takes the property" or "who personally committed violence against the victim or put the victim in fear" when pursuing a conviction against joint participants. Watkins v. State, 551 So.2d 421,423 (Ala.Cr.App. 1988). An accused's participation can be resolved by the jury through inferences from facts regarding the accused's companionship with the other actors, and the accused's conduct before, during, and after the commission of the act. Watkins, 551 So.2d at 423-24. Once a prima facie case is established, the jury's decision concerning the extent of the accused's participation cannot be disturbed on appeal. SeeNguyen v. State, 547 So.2d 582, 592 (Ala.Cr.App. 1988).
Here, the victims testified that on November 1, 1994, they were approached by several young men riding in a white Buick Park Avenue automobile. While one of the individuals asked the victims for directions to the nearest Hardee's, two others exited the automobile and robbed the victims of their book bags and the contents, and took a pair of tennis shoes that one of the victims was wearing. The victims supplied police with a description of the robbers and the getaway vehicle, together with the vehicle's tag number. The vehicle was traced to the appellant who, when confronted by his mother, supplied her with several items taken from the victims. The appellant's mother telephoned the police, who then took a statement from the appellant in which he admitted his participation in the offense, including the fact that he served as the driver of the getaway car. Thus, sufficient evidence of the robbery was presented. Accordingly, no basis for reversal exists.
The judgment of the trial court is therefore affirmed.
AFFIRMED.
All the Judges concur.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).