KELLUM, Judge.
The appellant, Terrence Beemon, was convicted of one count of first-degree robbery, see § 13A-8-43, Ala.Code 1975. The trial court sentenced Beemon to 30 years’ imprisonment; the sentence included a 10-year enhancement pursuant to § 13A-5-6(a)(4) Ala.Code 1975 — the mandatory sentence enhancement applied when a firearm *690 or deadly weapon is used or attempted to be used during the commission of a Class A felony, such as first-degree robbery. The trial court also ordered Beemon to pay $20,000 restitution, $1,000 to the crime victims compensation fund, and court costs.
The evidence presented at trial established that around 8:45 p.m. on December 8, 2007, four robbers armed with pistols and stun guns invaded the home of Praful Patel on Towne Lake Place as he returned home from work. One of the robbers pistol-whipped Praful in the kitchen and tied him up, using plastic binding. Praful’s parents, who were in the living room at the time, were thrown to the ground, beaten, and likewise bound. One robber kicked down the door to the computer room in the Patels’ house and forced Praful’s son, May-ank Patel, out of the room at gunpoint. Mayank was then taken through the house at gunpoint while the robbers looked for money. One of the robbers demanded that Praful tell them where his money was hidden and poured hot water on him to make him comply with their demands. Praful eventually led the robbers to a small safe, which the robbers broke open; the safe contained more than $20,000 in cash, which the robbers took. The robbers then fled from the Patel household. Although each of the robbers was wearing dark clothing and some sort of mask covering his face, Praful could tell that the robbers were all black men because he could see a little bit of their faces through the openings in their masks. Mayank testified that all four robbers were wearing gloves.
Lisa Boone, who lived on Towne Lake Place, testified to seeing a “light-colored blue silvery looking car” parked at the end of the street on the night in question. (R. 57.) Boone found this noteworthy because she had never seen a vehicle parked in that spot in the 15 years she had been living on that street. Boone also noted that the vehicle had a Ten Commandments bumper sticker on the left side of the bumper. Boone proceeded to drive through the neighborhood and returned to Towne Lake Place approximately five minutes later. Boone observed that the vehicle was still parked in the same place and that no one was inside the vehicle. After hearing about the robbery at the Patel house, Boone contacted the Montgomery Police Department (“MPD”) and provided a description of the vehicle she had seen parked on Towne Lake Place, specifically noting the Ten Commandments sticker she had observed on the vehicle’s bumper.
Later in the evening, police arrested Beemon after stopping a vehicle matching the description given to police. While in custody, Beemon received a text from a person later determined to be Ronald Car-gill that read: “[You] need to take that bumper sticker off.” (C. 102; R. 143, 151— 153.) MPD Detective B.E. Thornell conducted the first interview with Beemon at the police station. During this interview, Beemon denied any involvement with the robbery and told Detective Thornell that on the night in question, he was at home watching a pay-per-view boxing match. Beemon also told Thornell that his vehicle was also at home on the night in question and that he did not lend it to anyone.
Beemon later gave additional statements to MPD Detective Mike Myrick. In his second statement, Beemon initially reiterated his claim that he was at home the night the Patels were robbed, but after Detective Myrick told Beemon that they could check to see if he actually ordered the boxing match on pay-per-view, Beemon changed his story. Beemon told Detective Myrick that he was at a restaurant when he received a call from Ronald Cargill. Cargill asked Beemon to come and pick *691 him up, then give him a ride home. Beem-on agreed and Cargill directed him to a house in the Towne Lake subdivision. Beemon told Detective Myrick that upon arriving at the house, Cargill came running from the house wearing a camouflage jacket and dark jeans. After Detective Myrick began to question the facts given to him, Beemon once again changed his story. In his third version of events, Beemon told Detective Myrick that he did not pick Cargill up at the residence in Towne Lake; rather he drove Cargill to the residence in question. Beemon claimed that once they arrived there, the two waited outside the house, but did not get out of the vehicle or make contact with anyone there and drove away after waiting a few minutes. Beemon told Myrick that they drove to the house because Carlos Abrams had telephoned Cargill and told him that he needed help with the house. Detective Myrick testified that Beemon admitted that he knew a robbery was going on when he drove over to the house.
Kristen Maturi of the Alabama Department of Forensic Sciences conducted DNA testing on a pair of brown work gloves recovered by MPD Detective G.R. Tim-merman from the driver’s side floorboard of Beemon’s vehicle. According to Maturi, the DNA evidence recovered from the inside of the gloves matched Beemon’s genetic profile, and the DNA evidence recovered from blood on the outside of the glove matched the genetic profile of Praful Patel.
Beemon testified in his own defense at trial. Beemon stated that he was riding around with Cargill on the night in question when Abrams telephoned them and directed them to the Patel house. Beemon admitted that he knew a robbery was taking place. Once they arrived at the house, Cargill got out to join in the robbery while Beemon remained inside the vehicle. Beemon testified that he was not armed with a weapon at the time and did not know if Cargill was armed. Cargill returned to the vehicle after 5 or 10 minutes, at which time the two drove away from the scene. Beemon testified that he asked Cargill what happened inside the residence, but claimed that he did not know that the people in the house had been robbed until he arrived at the police station. Beemon admitted to lying in prior statements because he did not want to put himself at the scene of the robbery. On cross-examination, Beemon admitted that he took Cargill over to the Patel household knowing that Cargill was going to participate in the robbery. Beemon stated that he did not know if anyone other than Cargill was involved with the robbery. Beemon believed Cargill was joking when he sent Beemon the text telling him to take the Ten Commandments bumper sticker off his vehicle. Beemon also stated that the gloves recovered from his vehicle containing his DNA were not his; he claimed that he had never seen them before trial.
After both sides rested and the trial court instructed the jury on the applicable law, the jury convicted Beemon of one count first-degree robbery as charged in the indictment.[1] Beemon appealed.
I.
On appeal, Beemon argues that the trial court erred in failing to instruct the jury on second- and third-degree robbery as lesser-included offenses of first-degree robbery. Specifically, Beemon contends that there was ample evidence presented at trial to support both instructions.
At the conclusion of the State’s case-in-chief, counsel for Beemon asked the trial court if it anticipated instructing the jury *692 on second- or third-degree robbery as a lesser-included offense of first-degree robbery. The trial court stated that, based on the evidence presented, it would not be giving those instructions. It explained:
“Well, if the jury believes the evidence in this case, that would be inapplicable. It wouldn’t apply in this case. So the Court you know, it’s up to the jury to believe the evidence. And the evidence that has been presented, there’s just no grounds for the lesser included offense or on robbery or kidnapping.”
(R. 249.) Counsel for Beemon again asked the trial court at the close of the defense’s case to instruct the jury on second- or third-degree robbery, but the trial court once again refused.
“In Clark v. State, 896 So.2d 584, 641 (Ala.Crim.App.2000), the Court of Criminal Appeals addressed when it is appropriate to give a jury a charge on a lesser-included offense:
“ ‘ “A person accused of the greater offense has a right to have the court charge on lesser included offenses when there is a reasonable theory from the evidence supporting those lesser included offenses.” MacEwan v. State, 701 So.2d 66, 69 (Ala.Crim.App.1997). An accused has the right to have the jury charged on “‘any material hypothesis which the evidence in his favor tends to establish.’ ” Ex parte Stork, 475 So.2d 623, 624 (Ala.1985). “[Ejvery accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however[ ] weak, insufficient, or doubtful in credibility,” Ex parte Chavers, 361 So.2d 1106, 1107 (Ala.1978), “even if the evidence supporting the charge is offered by the State.” Ex parte Myers, 699 So.2d 1285, 1290-91 (Ala.1997), cert. denied, 522 U.S. 1054, 118 S.Ct. 706, 139 L.Ed.2d 648 (1998). However, “[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.” § 13A-l-9(b), Ala. Code 1975. “The basis of a charge on a lesser-included offense must be derived from the evidence presented at trial and cannot be based on speculation or conjecture.” Broadnax v. State, 825 So.2d 134, 200 (Ala.Crim.App.2000), aff'd, 825 So.2d 233 (Ala.2001), cert. denied, 536 U.S. 964, 122 S.Ct. 2675, 153 L.Ed.2d 847 (2002). “ ‘A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) the requested charge would have a tendency to mislead or confuse the jury.’ ” Williams v. State, 675 So.2d 537, 540-41 (Ala.Crim.App.1996), quoting Anderson v. State, 507 So.2d 580, 582 (Ala.Crim.App.1987).’ ”
Warren v. State, 35 So.3d 639, 640-41 (Ala.2008).
A person commits the crime of first-degree robbery if that person “violates § 13A-8-43 and he: (1) [i]s armed with a deadly weapon or dangerous instrument.” § 13A-8-41(a), Ala.Code 1975. A person commits the crime of second-degree robbery if that person “violates § 13A-8-43 and he is aided by another person actually present.” § 13A-8-42, Ala.Code 1975. Section 13A-8-43, AIa.Code 1975, states:
“(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
“(1) Uses force against the person of the owner or any person present *693 with intent to overcome his physical resistance or physical power of resistance; or
“(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.”
Furthermore, § 13A-2-23, Code of Alabama 1975, provides for accomplice liability in a situation such as the one in this case. That section provides, in pertinent part:
“A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
[[Image here]]
“(2) He aids or abets such other person in committing the offense.”
See also, Wigfall v. State, 710 So.2d 931, 938 (Ala.Crim.App.1997) (“The phrase ‘aids and abets’ encompasses all assistance rendered, Moody v. State, 615 So.2d 126, 128 (Ala.Crim.App.1992), including serving as the “wheel man’/chauffeur for the defendant’s companions. See Browning v. State, 429 So.2d 653, 654 (Ala.Crim.App.1982); Webber v. State, 376 So.2d 1118, 1127 (Ala.Crim.App.), cert. denied, 376 So.2d 1129 (Ala.1979).”).
Initially, we note that second-degree robbery is not normally a lesser-included offense of first-degree robbery. See Lidge v. State, 419 So.2d 610 (Ala.Crim.App.), writ denied, 419 So.2d 616 (Ala.1982). However, if a defendant’s indictment for first-degree robbery includes language indicating that the defendant was aided in his or her conduct by another person — an essential element for second-degree robbery — then the indictment alleges a fact essential to contemplate second-degree robbery as a lesser-included offense of first-degree robbery. See Wright v. State, 902 So.2d 720 (Ala.Crim.App.2004). Here, Beemon’s indictment stated:
“[Beemon] whose name is otherwise unknown to the Grand Jury, did, in the course of committing a theft of lawful currency and/or coinage of the United States of America and/or other property, of some value, a better description of which is unknown to the Grand Jury, use force against the person of the owner or any person present, Lalita Patel and/or Mayank Patel and/or Shanashi Patel and/or Praful Patel, with intent to overcome their physical resistance or physical power of resistance, or threaten the imminent use of force against the person of the owner or any person present, Lalita Patel and/or Mayank Patel and/or Shanashi Patel and/or Praful Patel, with the intent to compel acquiescence to the taking of or escaping with the property, while the said Terrence Beemon, alias, and/or an accomplice was armed and/or represented himself to be armed with a deadly weapon or dangerous instrument, a gun, a better description of which is unknown to the Grand Jury, in violation of section 13A-8 — 41 of the Code of Alabama, against the peace and dignity of the State of Alabama.”
(C. 7.)(Emphasis added.) Because Beem-on’s indictment contained language concerning an accomplice, the indictment contemplated second-degree robbery as a lesser-included offense of first-degree robbery.
Additionally, Beemon appears to contend that he was entitled to a jury instruction on second- or third-degree robbery as lesser-included offenses of first-degree robbery on the grounds that he presented evidence indicating that although he knew that Cargill was partici *694 pating in a robbery of the Patel residence, Beemon never left the vehicle while the robbery was taking place. Even if Beem-on served only as the “wheel man” to this robbery, however, Beemon could still be convicted of first-degree robbery as an accomplice. See, Wigfall, 710 So.2d at 938. Thus, to the extent that Beemon contends that he was entitled to the lesser-included instructions on account of his serving solely as a “wheel man,” that argument is not an accurate statement of law and entitles him to no relief.
In Ex parte Hannah, 527 So.2d 675 (Ala.1988), the Supreme Court determined that Hannah, the “wheel man” in a robbery, was not entitled to a charge on second-degree robbery as a lesser-included offense of first-degree robbery because the evidence established that his accomplice was armed with a gun during the commission of the robbery. The Supreme Court noted:
“In order for the petitioner to be convicted of robbery in the second degree, there must be evidence that the robbery was committed by two or more persons and that he did not have an intent to commit the armed robbery or knowledge that an accomplice was going to do so. No evidence was presented that would indicate that the petitioner was guilty of robbery in the second degree.”
527 So.2d at 677. Thus, pursuant to Hannah, in order for a “wheel man” accomplice to be entitled to a jury instruction on second-degree robbery as a lesser-included offense of first-degree robbery, that defendant’s “reasonable theory” of his or her defense must tend to demonstrate either (1) that his codefendant or codefendants did not carry out an armed robbery, or (2) that, if his codefendant or codefendants carried out an armed robbery, the wheel-man accomplice presented evidence tending to show that he did not have the intent to commit the armed robbery or that he did not have the knowledge that an accomplice was going to commit an armed robbery.
A.
Under the first prong of Hannah, we note that the evidence presented by Beemon did not promote a reasonable theory that the crime that took place inside the Patel household was not a first-degree robbery. In Petway v. State, 690 So.2d 531 (Ala.Crim.App.1996), overruled on other grounds by Wright v. State, 902 So.2d 720 (Ala.Crim.App.2004), this Court rejected Petway’s claim that the trial court erred in failing to give a jury instruction on second-degree robbery. We explained:
“The evidence was uncontroverted that a shotgun was used in the course of the robbery. Based on the evidence presented by the State, the appellant would be criminally liable for Prosser’s use of the shotgun in carrying out the robbery. Because the appellant would be criminally liable for the acts of Pros-ser, his accomplice, he would be guilty of robbery in the first degree and nothing less.
“It is true, as the appellant contends, that ‘if a defendant asks for a jury charge on a lesser included offense, he is entitled to such a charge if there is any rational basis or reasonable theory that would support a conviction on the lesser offense.’ Ex parte McCall, 594 So.2d 628, 629 (Ala.1991). Specifically, the appellant asserts that, based on the Court’s holding in McCall, the trial court should have given the second degree robbery charge because there existed a rational basis or reasonable theory to support the contention that the appellant did not use a weapon in the commission of the crime.
*695 “In McCall, there was conflicting testimony as to whether a gun or other deadly instrument was used in the robbery. In fact, the Court held that there was ‘ample evidence from which to find a rational basis or reasonable theory that no dangerous weapon was used.’ 594 So.2d at 630. However, in the present case, the evidence was uncontrovert-ed that a deadly weapon was used in the commission of the crime. Because the appellant is legally accountable for the acts of his accomplice, the fact that the appellant did not actually hold the gun during the commission of the crime is irrelevant.
“For these reasons, the appellant was either guilty of the crime of robbery in the first degree or was not guilty of any crime at all. Therefore, we hold that the appellant was not entitled to a jury instruction on robbery in the second degree.”
690 So.2d at 534.
Here, it is readily apparent that the crime committed in the Patel residence qualified as a first-degree robbery and nothing else. The evidence was uncontro-verted that handguns and stun guns were used during the robbery of the Patel household. Both Praful and Mayank Patel testified that each robber was armed with a pistol or a stun gun. “The presence of a gun elevates third degree robbery to first degree robbery.” Love v. State, 677 So.2d 1272, 1274 (Ala.Crim.App.1996), quoting Ex parte Curry, 471 So.2d 476, 478 (Ala.1984). Beemon presented no evidence refuting the State’s allegation that deadly weapons were used in the -commission of the robbery. Thus, Beemon is entitled to no relief under the first prong of Hannah. See also Love, 677 So.2d at 1274 (“Because of the overwhelming evidence in this case, the trial court did not commit reversible error in giving jury instructions for robbery in the first degree only and denying appellant’s requested jury instructions.”).
B.
Under the second prong of Hannah, we must determine whether Beemon presented a reasonable theory either that he did not have the intent to commit an armed robbery or that he did not have the knowledge that any accomplices intended to do so. At trial, the only evidence presented by Beemon to support a claim that he lacked the intent to commit armed robbery, or that he did not have the knowledge that an accomplice intended to commit armed robbery, was Beemon’s self-serving testimony that he did not participate in the robbery nor did he see a weapon on Cargill as Cargill got out of the vehicle to go into the Patel house.
A survey of our caselaw reveals that this Court and the Alabama Supreme Court have applied a case-by-case approach in determining whether a defendant presented a reasonable theory of defense through his own testimony sufficient to warrant jury instructions on requested lesser-included offenses. Alabama courts have repeatedly stated that the trial court can refuse to charge on a lesser-included offense only when “(1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) the requested charge would have a tendency to mislead or confuse the jury.” See, e.g., Williams, 675 So.2d at 540-41, quoting Anderson, 507 So.2d at 582; Ex parte Stork, 475 So.2d 623 (Ala.1985), quoting Ex parte Chavers, 361 So.2d 1106 (Ala.1978). Although neither this Court nor the Alabama Supreme Court has explicitly defined what constitutes a reasonable theory of defense or has developed a test by which other courts can weigh the reasonableness of a theory, we can see two overarching *696 considerations spanning cases addressing this issue: (1) how does the defendant’s theory comport with the evidence presented by both the defendant and the State at trial, and (2) how would the jury reach a hypothetical verdict in which it convicted the defendant of a lesser-included offense.
1. The self-serving statement and other evidence.
In Harbin v. State, 14 So.3d 898 (Ala.Crim.App.2008), this Court discussed situations in which a self-serving statement did not present a “reasonable or rational theory of the evidence” when viewed in the context of the other evidence presented at trial and, thus, did not entitle a defendant to lesser-included jury instructions. We explained:
“Harbin also contends that the trial court erred in refusing to instruct the jury on criminally negligent homicide as a lesser-included offense of murder. He maintains that there was evidence — specifically, his two statements to police in which he claimed that he forgot that the knife was in his hand when he stabbed Harris — to support the charge.
[[Image here]]
“In this case, there was no reasonable or rational theory from the evidence to support a charge on criminally negligent homicide. The only evidence supporting such a charge, as Harbin concedes, is his own statements to police in which he claimed that he had forgotten that the knife was in his hand when he stabbed Harris. However, in Ex parte McWhorter, 781 So.2d 330 (Ala.2000), the Alabama Supreme Court recognized that, in certain situations, an accused’s self-serving statements may not be sufficient, alone, to warrant an instruction on a lesser-included offense. In Ex parte McWhorter, the appellant had given a statement to the police in which he initially stated that he was so intoxicated at the time of the crime that he did not remember it. However, as the interview with police continued, the appellant began to remember how the crime was committed, and he confessed providing great detail. On appeal he argued that the trial court had erred in not instructing the jury on a number of lesser-included offenses, including felony murder, intentional murder, and manslaughter, based on his statement to the police that he had been intoxicated at the time of the crime. In finding that the trial court had not erred in not instructing the jury on the lesser-included offenses, the Supreme Court stated:
“ ‘The evidence offered by McWhorter as to his alleged intoxication was glaringly inconsistent with his own statement giving detailed descriptions of the events occurring at the crime scene. No evidence substantiated his claim to have been intoxicated at the time of the killing, and, indeed, the other evidence as to his condition at the time of the crime was totally consistent with the proposition that he was sober. We hold that McWhorter’s self-serving statements suggesting he was intoxicated at the time of the killing, statements made in his internally inconsistent interview by Detective Maze, is, as a matter of law, insufficient to satisfy the rigorous standard of showing that the intoxication relied upon to negate the specific intent required for a murder conviction amounted to insanity. ’
“Ex parte McWhorter, 781 So.2d at 342 (emphasis added).
“Subsequently, in Clark [v. State, 896 So.2d 584, 641 (Ala.Crim.App.2000) (opinion on return to remand) ], supra, this Court, relying on Ex parte McWhorter, held that the trial court had *697 not erred in not instructing the jury on heat-of-passion manslaughter when the only evidence supporting such an instruction was the appellant’s own statement to police. We explained:
“‘Although McWhorter did not involve the same factual situation as that presented here, we find the Alabama Supreme Court’s opinion in McWhorter to be persuasive in our resolution of this issue. In this case, as in McWhorter, the only evidence supporting a charge on heat-of-passion manslaughter was Clark’s self-serving statement to the police. Although that statement was not internally inconsistent, as was the statement in McWhorter, it was directly refuted by undisputed physical evidence from the crime scene. When police officers arrived at the crime scene, the stick that Clark claimed Ewing had wielded as he approached Clark in front of the checkout counter was found propped up on end against the wall in a corner behind the counter. Under Clark’s theory of the case, either he or a stabbed and bleeding Ewing must have taken the time at some point either during the struggle or after the struggle to walk behind the counter and place the stick on end up against the wall. This theory is simply not reasonable.
“ “We will not find plain error in a trial court’s refusal to instruct a jury on a lesser-included offense where the only evidence tending to bring the crime within the definition of that lesser-included offense is a defendant’s self-serving statement and where that statement is directly refuted by undisputed physical evidence. We hold, therefore, that under the circumstances in this case, it was not plain error for the trial court not to instruct the jury on heat-of-passion manslaughter as a lesser-included offense of capital murder.’
“Clark, 896 So.2d at 642.
“Here, as in Ex parte McWhorter and Clark, the two statements Harbin made to police were the only support for a charge on criminally negligent homicide. Although Harbin consistently asserted in both statements that he had forgotten that the knife was in his hand when he stabbed Harris, another crucial part of his statements contained a glaring inconsistency — in his first statement, Harbin admitted that he had pulled the knife out in response to the fight, while in his second statement Harbin stated that he already had the knife out and was cleaning his fingernails in the parking lot of the gas station when the fight broke out. In addition, the undisputed evidence indicated that the knife used by Harbin was over seven inches long and that Harris suffered from not one, but three, separate stab wounds. Under Harbin’s theory of the case then, he stabbed Harris three separate times while holding a knife over seven inches long without knowing it. This theory is simply not reasonable.”
14 So.3d at 909-12.
From McWhorter, Clark, and Harbin, we are able to glean three important factors that must be considered when determining whether a defendant’s self-serving statement established a reasonable theory of defense sufficient to entitle the defendant to requested lesser-included jury instructions. First, we must consider whether other evidence presented at trial substantiated the claim presented by the defendant’s self-serving statement. See McWhorter, 781 So.2d at 342 (McWhorter’s theory that he was intoxicated was unreasonable based, in part, upon the fact that no evidence presented at trial corrob *698 orated this claim). Second, we must consider whether the defendant’s contention is directly refuted by undisputed physical evidence. See, e.g., id. (“the other evidence as to [McWhorter’s] condition at the time of the crime was totally consistent with the proposition that he was sober”); Clark, 896 So.2d at 642 (“We will not find plain error in a trial court’s refusal to instruct a jury on a lesser-included offense where the only evidence tending to bring the crime within the definition is a defendant’s self-serving statement and where that statement is directly refuted by undisputed physical evidence.”). Finally, we must consider whether the defendant’s contention is implausible or absurd. See Harbin, 14 So.3d at 912 (“Under Harbin’s theory of the case then, he stabbed Harris three separate times while holding a knife over seven inches long without knowing it. This theory is simply not reasonable.”). Although no single factor is dispositive in determining the reasonableness of a defense theory, they provide useful guideposts in reviewing whether the trial court’s decision not to give requested jury instructions on lesser-included offenses was justified given the specific evidence presented at trial by both the State and the defendant.
Here, when we apply these considerations to Beemon’s self-serving testimony, it is apparent that Beemon’s theory of the case is an unreasonable one, given the evidence presented at trial. Beemon presented no corroborating evidence tending to show that he served only as the wheel man for the armed robbery or to support his contention that he remained in his vehicle during the robbery. Beemon’s claim was refuted by Lisa Boone’s testimony that she saw Beemon’s vehicle during the time the armed robbery took place, but did not see anyone inside the car. Furthermore, Beemon claims that he was in control of his car on the night of the armed robbery and that no one else drove the vehicle, but he also claimed that he had never before seen the gloves covered in Praful Patel’s blood recovered from the floorboard underneath the driver’s seat in his vehicle. Beemon’s theory with respect to the gloves linking him to the armed robbery amounts to nothing more than a claim of ignorance. This is patently unreasonable.
We cannot say that the trial court erred in determining that Beemon’s self-serving statement was not sufficient as a matter of law to create a reasonable theory of the evidence when considered in the context of the other evidence presented at trial.
2. The hypothetical lesser-included convictions.
In determining whether a defendant has presented a reasonable theory of the evidence, our courts have hypothesized as to what specific evidence presented by both parties a jury would have to piece together in order to convict a defendant on a lesser-included offense. In situations where a hypothetical conviction on a lesser-included offense would have required the jury to unreasonably piece together the facts presented, our courts have held that the defense theory is unreasonable and insufficient to establish that the defendant was entitled to the lesser-included instruction. In Warren, the Supreme Court held that the defendant was not entitled to a jury instruction on third-degree robbery as a lesser-included offense of first-degree robbery on the ground that the jury’s verdict would require an unreasonable assimilation of the facts presented. The Court explained:
“In Ex parte Hannah, 527 So.2d 675, 677 (Ala.1988), this Court stated:
“ ‘As [Chavers v. State, 361 So.2d 1106 (Ala.1978),] holds, a court may *699 properly refuse to charge on lesser included offenses when it is clear to the judicial mind “that there is no evidence tending to bring the offense within the definition of the lesser offense.” ’
“In Ex parte Hannah, this Court found that the defendant presented evidence at trial denying that a robbery of any kind had occurred and that in order for the jury to reach the conclusion that the lesser offense of robbery in the second degree had occurred, it would have had to presume that witnesses for both the petitioner and for the prosecution were lying. 527 So.2d at 677.
“ ‘It logically follows, we think, that where the evidence permits no reasonable conclusion other than that defendant is guilty of robbery in the first degree as expressly charged or not guilty of any offense whatever, charges as to robbery in the second or robbery in the third degree should not be given. The trial court was correct in limiting its oral charge accordingly.’
“Richburg v. State, 416 So.2d 1079, 1082 (Ala.Crim.App.1982).
“If Warren’s entire testimony was to be believed, then he would not be guilty of any kind of robbery because he neither had a weapon nor made a threat. The only way the jury could convict Warren of third-degree robbery was if the jury believed that both Knox and Warren had lied and then cobble together various elements of their contrasting testimony to reach a compromise verdict. In other words, a conviction for third-degree robbery would require the jury to believe the victim’s testimony that Warren threatened her and disbelieve his testimony that he did not threaten her, and to disbelieve her testimony that he had an anchor and believe his testimony that he did not. This very closely resembles the scenario in Ex parte Hannah.
“An instruction on third-degree robbery was not required under the facts here. The trial court did not err when it failed to instruct the jury on the lesser-included offense of robbery in the third degree.”
35 So.3d at 642-43.
Likewise, this Court has recognized that a defendant’s theory of defense is unreasonable if it requires the jury to unreasonably piece together facts sufficient to support a conviction for the lesser-included offense and calls for the jury to speculate as to what happened. In Boyd v. State, 699 So.2d 967 (Ala.Crim.App.1997), this Court explained:
“Here, the appellant completely denied any sexual contact (as that term is defined in § 13A-6-60(3), Ala.Code 1975) with the victim and claimed that he merely masturbated in her presence; his position is inconsistent with his request for instructions on first degree sexual abuse, § 13A-6-66(a), Ala.Code 1975. In addition to testifying that the appellant pulled off her shorts and underwear, that he unbuttoned and unzipped his pants, and that she saw his pubic hair before she lost consciousness, the victim testified that, after the attack, there was wetness and soreness in her vaginal area, that she felt that the appellant had penetrated her, and that she ‘felt as though something had been inside me like I do after I have sex.’ (R. 152-53.) In order for the jury to reach the conclusion that the appellant was guilty only of sexual abuse as a lesser included offense of rape in the first degree, it would have had to conclude both that the appellant was lying and that the victim’s testimony should be discounted insofar as she stated that she felt she had been penetrated in a man *700 ner consistent with sexual intercourse. The jury would then have to somehow infer and speculate that what really happened was that the appellant committed some sort of sexual contact that caused the victim to experience the same sensation that she would have had had she been penetrated in a manner consistent with sexual intercourse, although no sexual intercourse was involved. While not impossible, such a scenario calls for substantial speculation and would not be derived from any evidence that was presented. We agree with the state’s argument that an instruction on sexual abuse would have been inappropriate because there was no evidence of sexual contact ‘other than that contained within the penetration which by definition made the appellant’s action rape in the first degree.’ (State’s brief at 32.) An instruction on sexual abuse in the first degree would merely have encouraged the jury to reach a ‘compromise’ verdict based on speculation. ‘Since the appellant denied that “any act” between the parties occurred and since there was no “reasonable theory” presented at trial to support a lesser offense, the trial court had no obligation to charge on a lesser offense.’ Kirksey v. State, 475 So.2d 646, 648 (Ala.Cr.App.1985).”
699 So.2d at 972-73. Similarly, in Ingram v. State, 570 So.2d 835 (Ala.Crim.App.1990), this Court explained:
“In this case, we find that the evidence simply does not support a verdict of sexual abuse in the second degree. In order for the jury to reach the conclusion that the appellant was guilty only of sexual abuse in the second degree as a lesser included offense, it would have to conclude that both the victim and the appellant were lying. It would then have to somehow infer and speculate that what really happened was that the appellant had sexually abused the victim but that no forcible compulsion was involved. We find no evidence to support such a conclusion. An instruction on the offense of sexual abuse in the second degree would only have encouraged the jury to reach a ‘compromise’ verdict based on speculation. ‘Since the appellant denied that “any act” between the parties occurred and since there was no “reasonable theory” presented at trial to support a lesser offense, the trial court had no obligation to charge on a lesser offense.’ Kirksey v. State, 475 So.2d 646, 648 (Ala.Cr.App.1985). See also Ex parte Hannah, 527 So.2d at 676-677.”
570 So.2d at 838.
Here, in order for the jury to convict Beemon of either second- or third-degree robbery, it would have to believe his testimony that he knew about the robbery and that he was willfully driving Cargill to participate in the robbery. The jury would also have to believe Beemon’s testimony that he never left the vehicle during the course of the robbery and disbelieve Boone’s testimony that she did not see anyone in Beemon’s vehicle at the time the armed robbery was taking place. Because Beemon did not testify that two or more robbers were actually present in the house, in order to convict Beemon of second-degree robbery, the jury would have to believe the victims’ testimony that two or more robbers participated in the actual robbery of the house. Additionally, if the jury were to convict Beemon of third-degree robbery, it would have to disregard the victims’ testimony that four robbers perpetrated the armed robbery of the Patel household. See Jackson v. State, 969 So.2d 930 (Ala.Crim.App.2007), quoting Fantroy v. State, 560 So.2d 1143 (Ala.Crim.App.1989) (a wheel man to a robbery with only one accomplice could be convicted only of third-degree robbery, not sec *701 ond-degree robbery, because he was not actually present during the robbery, and second-degree robbery under § 13A-8-42 requires that two robbers be present). This would be a completely unreasonable verdict given the evidence presented at trial.
Furthermore, the jury would have to believe either (1) Beemon’s testimony that he did not know an armed robbery was taking place inside the house, (2) Beemon’s testimony that he did not know if Cargill was armed when he left his vehicle to participate in the robbery, or (3) that the victims’ testimony that all the robbers were armed with either a pistol or stun-gun was false. Finally, the jury would essentially have to disregard the glove found in Beemon’s car, which was covered in blood matching the genetic profile of Praful Patel and containing on the inside DNA material matching Beemon’s genetic profile. Even though Praful Patel testified that his assailant, as well as the other robbers, wore gloves during the armed robbery, the jury would have to conclude that the glove recovered from Beemon’s vehicle was not his and would have to believe Beemon’s testimony that he did not know how that glove ended up on the floorboard of his vehicle under the driver’s seat or would have to speculate as to how the glove ended up under Beemon’s seat without his knowing, even though Beemon had testified that he was in control of the vehicle at all times on the night in question. This is simply an unreasonable assimilation of the facts presented.
Accordingly, a hypothetical conviction for either second- or third-degree robbery would require the jury to believe and disbelieve bits and pieces of both Beemon’s testimony and the evidence presented by the State at trial. A conviction for either lesser-ineluded offense would necessarily require the jury to disregard — or to find unpersuasive — unrefuted physical evidence presented by the State. Similarly, the jury would have to disbelieve testimony by the State’s witnesses while accepting as truth Beemon’s trial testimony even though he admitted on the stand that he had lied several times already to investigators regarding the nature of his involvement with the armed robbery. Thus, any conviction for a lesser-ineluded offense would have necessarily required the jury to piece together a verdict in a wholly irrational and speculative manner.
The only evidence tending to bring the crime within the definition of second- or third-degree robbery was Beemon’s self-serving testimony, which was strongly refuted by overwhelming physical evidence presented by the State. Based upon the contradictory nature of Beemon’s testimony, the overwhelming evidence presented by the State regarding the nature of the crime and Beemon’s involvement, and Beemon’s admissions regarding his involvement with the robbery of the Patel household, the trial court did not abuse its discretion in determining that Beemon presented an unreasonable theory of defense. Accordingly, the trial court did not commit reversible error by denying Beem-on’s requested jury instructions on the lesser-ineluded offenses of second-degree and third-degree robbery.
II.
Beemon also argues that the trial court erred in allowing the State to question Beemon about a prior conviction for third-degree assault. Beemon contends that the State’s introduction of evidence concerning this misdemeanor conviction was improper impeachment evidence under Rule 609, Ala. R. Evid., and, thus, constituted reversible error.
At trial, Beemon testified in his own defense. Early in Beemon’s testimony, *702 counsel asked Beemon how far he went in school, to which Beemon indicated that he had completed the 11th grade. During cross-examination, the following exchange took place:
“[The State]: Okay. Now, let me ask you this: You testified a minute ago that you completed school up to the 11th grade. How come you didn’t finish up?
“[Beemon]: I had a job, and they said it was best to go get my GED because I was missing too many classes.
“[The State]: Wait. Are you saying the principal told you you shouldn’t finish school?
“[Beemon]: Because of my absences.
“[The State]: Well, why were you absent so much?
“[Beemon]: Job.
“[The State]: Okay. Now, what’s the time frame we’re talking about? What was your senior year toes [sic] supposed to have been?
“[Beemon]: 2008, sir.
“[The State]: 2008? Starting in 2008 or going to end in 2008?
“[Beemon]: End of 2008 I would have been graduated.
“[The State]: End of 2008?
“[Beemon]: Yes, sir.
“[The State]: So on August 31st of 2007, you were supposed to be in the 12th grade theoretically?
“[Beemon]: Yes, sir
“[The State]: What were you doing that day?
“[Beemon]: I was—
“[Defense counsel]: May we approach, Your Honor? Objection. May we approach?
“[Outside the presence of the jury] I object. He is trying to get into a misdemeanor that would not be admissible under the rules.
“[The State]: The only reason he was out of school isn’t because of his job and his work. In fact, he was in jail on an assault on a police officer that same day.
“[Defense counsel]: That’s a misdemeanor. That is not admissible under the rules.
“[The State]: I didn’t ask him about the school. She’s the one that brought it up. She opened the door.
“[Defense counsel]: Asking how far he went in school does not open the door to—
“THE COURT: Of course you asked—
“[Defense counsel]: I simply said how far did you go in school. He said 11th grade. I didn’t ask about a specific day in school. It’s just a qualifying, like where do you live.
“THE COURT: Overruled.”
(R. 292-93.) The State proceeded to elicit testimony from Beemon in which he admitted that he was in jail on third-degree-assault charges at the time he would have otherwise been starting his senior year of high school.
“The admission or exclusion of evidence is a matter within the sound discretion of the trial court.” Taylor v. State, 808 So.2d 1148, 1191 (Ala.Crim.App.2000), aff'd, 808 So.2d 1215 (Ala.2001). “The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.” Ex parte Loggins, 771 So.2d 1093, 1103 (Ala.2000). This is equally true with regard to the admission of collateral-acts evidence. See Davis v. State, 740 So.2d 1115, 1130 (Ala.Crim.App.1998).
Under Rule 609, Ala. R. Evid., the State may introduce evidence of prior felony convictions, but not misdemeanor convictions, in order to impeach the credibility of *703 the accused at trial. The State argued at trial and on appeal that defense counsel’s asking Beemon on direct examination how far he went in school and Beemon’s testifying that he only completed school through the 11th grade, opened the door to questioning regarding why Beemon completed only the 11th grade.
The questions that allegedly opened the door for the State were nothing more than introductory questions about the witness. Counsel asked Beemon how far he went in school to which he replied, “eleventh grade.” (R. 270.) This was the extent to which direct examination covered Beemon and school. It would be unreasonable to conclude this one question and answer opened the door and allowed the State to probe into why Beemon stopped attending school after the 11th grade. Furthermore, although Beemon testified on cross-examination that he did not finish school because of work and because he was missing too much school, the issue was blatantly interjected into the trial by the prosecution. The State cannot open the door to otherwise inadmissible evidence based upon its own line of examination. See Ex parte Ray, 52 So.3d 555 (Ala.2009) (holding the State could not introduce evidence of an otherwise inadmissible juvenile conviction when the door was allegedly opened only pursuant to the State’s cross-examination of the defendant). Because Beemon did not “open the door” to testimony regarding his third-degree-assault conviction, the trial court abused its discretion in allowing the State to introduce evidence of that conviction.
Nevertheless, we conclude that the admission of evidence of the prior conviction, although error, was harmless error. The harmless-error rule provides, in pertinent part:
“No judgment may be reversed or set aside ... on the ground of ... improper admission or rejection of evidence, ... unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”
Rule 45, Ala. R.App. P.
In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme Court held that before the violation of certain constitutional rights can be held to be harmless, the appellate court must be able to declare a belief that it was harmless beyond a reasonable doubt. In Ex parte Crymes, 630 So.2d 125 (Ala.1993), the Alabama Supreme Court explained:
“In determining whether the admission of improper testimony is reversible error, this Court has stated that the reviewing court must determine whether the ‘improper admission of the evidence ... might have adversely affected the defendant’s right to a fair trial,’ and before the. reviewing court can affirm a judgment based upon the ‘harmless error’ rule, that court must find conclusively that the trial court’s error did not affect the outcome of the trial or otherwise prejudice a substantial right of the defendant.”
630 So.2d at 126. See also Ex parte Greathouse, 624 So.2d 208, 210 (Ala.1993) (holding that the proper harmless-error inquiry asks, absent the improperly introduced evidence, “is it clear beyond reasonable doubt that the jury would have returned a verdict of guilty”).
Although the admission of the testimony of the prior conviction for third-degree assault was improperly admitted into evidence, we cannot say that Beemon was prejudiced to the point of calling into ques *704 tion the validity of his conviction. Beem-on’s theory of defense was nothing more than a claim that he was the “wheel man” in the armed robbery and not an active participant. We have reviewed the record, and it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict even without the evidence of the prior conviction. The State presented uncontroverted evidence that an armed robbery took place inside the Patel residence. Praful Patel testified that he was pistol-whipped by one of the robbers and that all the robbers were wearing gloves while they were committing. the armed robbery. Investigators recovered a bloody glove from the floorboard under the driver’s seat in Beemon’s vehicle. The DNA profile of the blood matched Praful Patel, and the profile of the DNA matter recovered from inside the glove matched Beem-on’s DNA profile. Beemon admitted that he was parked outside of the Patel residence at the time of the robbery. He also admitted that he knew a robbery was going on at the Patel household and that he knew Cargill was going to participate in the robbery once they arrived at the residence. Although he claimed he never got out of his vehicle, Lisa Boone testified that she saw the vehicle belonging to Beemon parked on Towne Lake Place during the time the armed robbery occurred, but she testified that she did not see anyone inside the vehicle.
Given the evidence presented at trial, the circuit court’s erroneous admission of testimony regarding the prior altercation did not affect the outcome of the trial or otherwise prejudice a substantial right of Beemon. See, Crymes, 630 So.2d at 126. Moreover, based on our review of the record, it is “clear beyond a reasonable doubt that the jury would have returned a verdict of guilty” regardless of the trial court’s erroneous admission of evidence of Beemon’s conviction for third-degree assault. Greathouse, 624 So.2d at 210. See also, Chapman, supra. Therefore, any error on the part of the trial court was harmless, and no basis for reversal exists as to this claim.
Based on the foregoing, the judgment of the trial court is due to be affirmed.
AFFIRMED.
WELCH, WINDOM, and MAIN, JJ., concur. WISE, P.J., recuses herself.

. Beemon was acquitted on four counts of second-degree kidnapping.